UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE; CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTH CAROLINA COASTAL FEDERATION; OCEANA; ONE HUNDRED MILES; SIERRA CLUB; and SURFRIDER FOUNDATION,<br><br>                Plaintiffs,<br><br>v.<br><br>WILBUR ROSS, in his official capacity as the Secretary of Commerce; the NATIONAL MARINE FISHERIES SERVICE; and CHRIS OLIVER, in his official capacity as the Assistant Administrator for Fisheries,<br><br>                Defendants. | NO. 2:18-cv-03326-RMG<br><br>UNOPPOSED MOTION TO INTERVENE OF THE INTERNATIONAL ASSOCIATION OF GEOPHYSICAL CONTRACTORS, CGG SERVICES (U.S.) INC., GX TECHNOLOGY CORPORATION, SPECTRUM GEO INC., TGS-NOPEC GEOPHYSICAL COMPANY, WESTERNGECO LLC AND THE AMERICAN PETROLEUM INSTITUTE |

## **LOCAL RULE 7.02 CERTIFICATION**

Pursuant to Local Rule 7.02, proposed intervenors the International Association of Geophysical Contractors ("IAGC"), TGS-NOPEC Geophysical Company, CGG Services (U.S.) Inc., GX Technology Corporation, Spectrum Geo Inc., WesternGeco LLC, and the American Petroleum Institute ("API") (collectively, "Proposed Intervenors") conferred with counsel for Plaintiffs South Carolina Coastal Conservation League, et al., and counsel for Defendants Wilbur Ross, et al. (collectively, "National Marine Fisheries Service" or "NMFS"). Counsel for NMFS stated that NMFS takes no position on this motion. Counsel for Plaintiffs stated that Plaintiffs do not oppose this motion.

## JOINT MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenors respectfully request that the Court grant their joint motion to intervene as defendants in this case as a matter of right or, in the alternative, exercise its discretion to permit their intervention. This motion is supported by the following memorandum and the proposed Answer to Plaintiffs' Complaint. In addition, this motion is supported by the Declaration of Nikki C. Martin ("Martin Decl."), the Declaration of Peter Seidel ("Seidel Decl."), the Declaration of Joseph R. Gagliardi, the Declaration of Michael Whitehead, the Declaration of Richie Miller, the Declaration of Gary Stuart Poole, and the Declaration of Erik Milito ("Milito Decl."). As indicated above, this motion is unopposed.

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### I. INTRODUCTION

Plaintiffs seek to invalidate, set aside, and enjoin five incidental harassment authorizations ("IHAs") issued under the Marine Mammal Protection Act ("MMPA") by NMFS. These IHAs are a prerequisite for geophysical exploration for oil and gas on the Atlantic Outer Continental Shelf ("OCS"). The IHAs were issued to Proposed Intervenors TGS-NOPEC Geophysical Company, CGG Services (U.S.) Inc., GX Technology Corporation, Spectrum Geo Inc., and WesternGeco LLC (collectively, the "Exploration Companies"). The Exploration Companies applied for these IHAs years ago, and have invested substantial amounts of time and resources in the administrative processes leading up to the issuance of these IHAs and related authorizations. IAGC and API also invested substantial amounts of time and resources participating in the public processes related to the issuance of the IHAs and related authorizations.

The Exploration Companies, along with IAGC and API, seek to intervene in this case to participate collectively as intervenor-defendants to protect their interests in the IHAs. Plaintiffs' claims, if successful, will negatively impact the Exploration Companies, IAGC, and API by forcing the suspension, modification, or cancellation of the planned geophysical surveys that can only legally proceed with the IHAs that NMFS has issued. Such a result will also have broader negative impacts on the geophysical exploration industry and the oil and gas industry.

Accordingly, the Exploration Companies, IAGC, and API respectfully request that this Court grant their motion to intervene as defendants with full rights of participation so that they may defend their unique interests. Proposed Intervenors intend to participate in all aspects of this case, including but not limited to opposing any interim requests for injunctive relief; defending the IHAs on the merits (along with defending all supporting and related decisions, including those under the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA")); participating in any remedy proceedings; participating in any settlement discussions; and filing (or defending against) any appeal of appropriate interlocutory orders or final decisions in this case. If granted intervention, Proposed Intervenors will participate collectively (*i.e.*, they will make single filings on behalf of the group) in the interests of judicial efficiency and clarity of presentation.

## II.  BACKGROUND

### A.     Litigation Context

The Exploration Companies intend to conduct geophysical surveys on the Atlantic OCS. In order to conduct these surveys, the Exploration Companies must obtain Geological and Geophysical ("G&G") exploration permits from the Bureau of Ocean Energy Management ("BOEM"). BOEM has management authority over all exploration activities on the OCS pursuant to the Outer Continental Shelf Lands Act. In 2014, after years of study, BOEM issued a

Final Programmatic Environmental Impact Statement ("PEIS") for proposed G&G activities in the Mid- and South Atlantic OCS. Martin Decl. ¶ 7. This Final PEIS evaluated the direct, indirect, and cumulative effects of issuing permits for such surveys.

Following completion of the Final PEIS, the Exploration Companies applied to BOEM for G&G permits. *See e.g.*, Seidel Decl. ¶ 8. On January 6, 2017, BOEM summarily denied all of the permit applications. Martin Decl. ¶ 8. The Exploration Companies and IAGC appealed the denial to the Department of Interior Board of Land Appeals ("IBLA"). *Id*. at ¶ 9. On May 10, 2017, BOEM issued a memorandum rescinding the denial, and the IBLA remanded the permit applications to BOEM with instructions to rescind the permit denials and proceed with permitting. *Id*. BOEM is still considering the permit applications. *Id*. at ¶ 10; *see, e.g.*, Seidel Decl. ¶ 16.

Contemporaneous with the permit applications, in 2014 and 2015, the Exploration Companies applied to NMFS for incidental take authorizations under the MMPA to permit the potential incidental interactions with marine mammals associated with the planned exploration activities. *See, e.g.*, Seidel Dec. ¶ 10. NMFS conducted a complete review as required by the MMPA, prepared an environmental analysis under NEPA (concluding that the planned surveys will not have significant environmental impacts), and issued a biological opinion under the ESA concluding that the surveys are not likely to jeopardize the continued existence of any threatened or endangered species, or adversely modify or destroy the critical habitat of any such species.[1] On November 30, 2018, NMFS issued separate IHAs to each of the Exploration Companies. Martin Decl. ¶ 10; *see, e.g.*, Seidel Decl. ¶ 15. Each IHA concluded, among other things, that the

---

[1] NMFS's decision documents in this case are available at: https://www.fisheries.noaa.gov/action/incidental-take-authorization-oil-and-gas-industry-geophysical-survey-activity-atlantic.

authorized incidental harassment would have a "negligible impact" and each IHA includes extensive conditions and mitigation measures. *See* 83 Fed. Reg. 63,268, 63,274-75 (Dec. 7, 2018) (NMFS's Notice of final IHAs).

**B.     Proposed Intervenors' Interests**

IAGC is a private non-profit trade association that represents approximately 80 members from all segments of the geophysical industry. Martin Decl. ¶ 3. IAGC's members, including the Exploration Companies, conduct geophysical studies and analyze data that is essential to the discovery and delivery of oil and natural gas resources. *Id.* at ¶¶ 3-4; *see, e.g.*, Seidel Decl. ¶ 4. IAGC advocates for its members to conduct exploratory activities in the OCS and specifically in the Atlantic OCS, and all of the IHAs that are the subject of this lawsuit are held by members of IAGC. Martin Decl. ¶¶ 4, 6. IAGC participated throughout the NEPA review and permitting processes at issue in this case, providing comments on the draft programmatic EIS, the final programmatic EIS, the Atlantic coast states' Coastal Zone Management Act reviews, and the IHAs. *Id.* at ¶¶ 7-10. As a result, IAGC has a strong interest in supporting the IHAs and the related reviews and authorizations. *Id.* at ¶¶ 11-12.

The Exploration Companies are recipients of the IHAs at issue in this lawsuit. The Exploration Companies have spent many years working to acquire the IHAs and related permits and have invested millions of dollars, thus far, in acquiring authorizations and preparing to conduct the permitted activities. *See, e.g.*, Seidel Decl. ¶¶ 5-17. The Exploration Companies actively participated, both individually and through IAGC, throughout NMFS's review and permitting processes and the related permitting processes carried out by BOEM. *See, e.g., id.* at ¶¶ 7-14. The Exploration Companies are industry leaders in geophysical surveying and technology development, and rely on access to areas like the Atlantic OCS to acquire geophysical data. *See, e.g., id.* at ¶ 4.

API is a national trade association representing over 600 member companies involved in all aspects of the U.S. oil and natural gas industry, including explorers, producers, refiners, suppliers, pipeline operators, marine transporters, and service and supply companies. Milito Decl. ¶ 2. API's members rely on seismic surveys (including the planned surveys that are the subject of this lawsuit) to identify potential oil and natural gas targets and to inform their business ventures. *Id*. at ¶ 8. API participated in numerous aspects of the public processes relating to the federal authorizations for the Atlantic OCS geophysical surveys at issue in this lawsuit, including the filing of detailed comments at numerous points in the regulatory processes. *Id*. at ¶ 10.

IAGC, the Exploration Companies, and API seek to intervene because this action could have negative impacts on: (1) the ability of the Exploration Companies to conduct geophysical surveys in the Atlantic OCS; (2) the ability of the Exploration Companies, as well as other IAGC and API members, to conduct geophysical surveys in other offshore and onshore areas; (3) the cost, manner, and duration of permitting for geophysical surveys; (4) the availability of high-quality geophysical data to make informed decisions about oil and gas resources; and (5) the contractual rights of the Exploration Companies. IAGC and API also seek to intervene to fulfill their organizational missions to advocate for geophysical surveys and to support the U.S. oil and natural gas industry, all of which depends on access to reliable geophysical data, including data from the Atlantic OCS.

### III.  ARGUMENT

**A.     Standard for Granting Intervention.**

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention. "Intervention as of right" requires the court to permit anyone to intervene upon timely motion who "claims an interest relating to the property or transaction that is the subject of the action, and

is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of intervention would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." *U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004).

"Permissive intervention," on the other hand, allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising discretion under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## B.     IAGC, the Exploration Companies, and API Meet All of the Requirements for, and Should Be Granted, Intervention as of Right.

Proposed Intervenors satisfy each of the four requirements for intervention as of right. These requirements are addressed, in turn, below.

### 1.     This motion is timely.

The timeliness of a motion to intervene is judged by (1) how far the underlying suit has progressed, (2) any prejudice to the existing parties by the resulting delay, and (3) the reasons for any tardiness. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). This litigation was filed less than two weeks ago and is in its earliest stages. Federal Defendants have not yet filed their

answer, and Proposed Intervenors have prepared and presented a proposed Answer that can be immediately filed if the Court grants this motion. Moreover, Plaintiffs do not oppose intervention. Accordingly, intervention is timely, and no prejudice, delay, or inefficiency will result from intervention. *See vonRosenberg v. Lawrence*, No. CV 2:13-587-RMG, 2017 WL 3638436, at *3 (D.S.C. Aug. 23, 2017) ("'The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal,'" and a "case is not within sight of the terminal" where "[t]he amended complaint was answered a mere four months ago and the first scheduling order was entered a mere two weeks ago." (quoting *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001))).

### 2. IAGC, the Exploration Companies, and API have significant protectable interests in this litigation.

A movant must demonstrate a "'significant protectable interest.'" *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. U.S.*, 400 U.S. 517, 531 (1971)). Such an interest exists when a movant "stand[s] to gain or lose by the direct legal operation of the district court's judgment on [the] complaint." *Id.* An economic interest in the subject matter of the litigation is sufficient to support intervention. *Defenders of Wildlife v. N.C. Dep't of Trans.*, 281 F.R.D. 264, 268 (E.D.N.C. 2012).

IAGC, the Exploration Companies, and API have significant protectable interests in this litigation. The Exploration Companies are the recipients of the IHAs that have been challenged by Plaintiffs. The Exploration Companies also expended significant resources in applying for and securing those IHAs and have been granted a protectable interest in authorizations that are required prior to conducting geophysical surveys on the Atlantic OCS. *See, e.g.*, Seidel Decl. ¶¶ 15, 17-18.

IAGC and API also have protectable interests in this litigation. IAGC and API coordinate and represent the interests of their members, including the Exploration Companies in the case of IAGC, to advance oil and gas geophysical surveys and to support the U.S. oil and gas industry. Martin Decl. ¶¶ 3-7; Milito Decl. ¶¶ 3-9. To accomplish its mission, IAGC advocates for and provides outreach on behalf of its members, including engaging government and regulatory entities on scientific, technical, and legal analyses; educating its members; and participating in regulatory proceedings affecting its members and the geophysical industry. Martin Decl. ¶ 4. Similarly, API conducts and sponsors research, engages with regulatory agencies, and participates in regulatory processes (including those related to the Atlantic IHAs) on behalf of the oil and gas industry. Milito Decl. ¶¶ 3, 6-10. API's members have a significant stake in the outcome of this litigation as the geophysical surveys will provide important information about whether and where accessible oil and gas resources may exist on the Atlantic OCS, which, in turn, will better inform any future decisions regarding the management of the Atlantic OCS oil and gas resources. Milito Decl. ¶¶ 8, 9, 11-13. Thus, some of the important interests API members seek to protect differ in certain respects from those of other Proposed Intervenors.

All of the interests described above are implicated by this lawsuit. As detailed below, the relief sought by Plaintiffs threatens to significantly impair these interests. *Teague*, 931 F.2d at 261. Each of the Proposed Intervenors therefore satisfies the second requirement for intervention as of right.

### 3.     Disposition in favor of Plaintiffs will harm IAGC, the Exploration Companies, and API's interests.

The test for impairment under Rule 24 focuses on practical effects. The movant must show that "as a practical matter," its interest may be impaired or impeded, which could occur as a result of trial or settlement. *Teague*, 931 F.2d at 261 (quoting Fed. R. Civ. P. 24(a)(2)). IAGC,

the Exploration Companies, and API meet this standard because their interests will be negatively affected in a practical sense if Plaintiffs' lawsuit succeeds.

Plaintiffs seek to enjoin the IHAs and thereby derail the Exploration Companies' planned geophysical surveys on the Atlantic OCS. If granted, Plaintiffs' requested relief would have substantial negative impacts on the Exploration Companies, as well as members of IAGC and API, by blocking the geophysical activities that have been authorized and impairing the collection of geophysical data necessary for making informed decisions about whether and how any further oil and gas exploration, or development, should be pursued on the Atlantic OCS. *See* Martin Decl. ¶¶ 11-12; Milito Decl. ¶¶ 11-13; *see, e.g.*, Seidel Decl. ¶¶ 18-20.

If successful, Plaintiffs' lawsuit will, at a minimum, delay the Exploration Companies' ability to conduct their authorized activities and impair the contracts the Exploration Companies have entered in preparation for the surveys. *See, e.g.*, Seidel Decl. ¶¶ 18-20. Moreover, the Exploration Companies have already committed substantial financial and staff resources to apply for required federal authorizations and to prepare for the geophysical surveys. *See, e.g.*, *id.* at ¶¶ 5-17. Plaintiffs' requested relief, if granted, would render those investments a complete loss. *See, e.g.*, *id.* at ¶ 18. Any injunction could also impose new burdens on geophysical surveys and further delay a permitting process that has already encompassed an unprecedented length of time. *See, e.g.*, *id.* at ¶ 19. Thus, resolution of this lawsuit in favor of Plaintiffs will practically impair and impede the shared and significantly protectable interests of the Proposed Intervenors.

### 4.     The Federal Defendants will not adequately represent the unique interests of Proposed Intervenors.

The interests of IAGC, the Exploration Companies, and API are sufficiently different from those of the Federal Defendants to warrant intervention. The showing required for inadequate representation is minimal. *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542

F.2d 214, 216 (4th Cir. 1976) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1971)). A movant need only show that its interests are different from the existing parties such that their representation "may be" inadequate. *Trbovich*, 404 U.S. 538 n.10; *United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 476 (4th Cir. 1987) (error to deny Philadelphia intervention because "while the interests of the Bank and Philadelphia may turn out to be the same, they may not be, and although the Bank's representation of Philadelphia's interest may be adequate, it also may be inadequate").

The government's interest is different from that of private citizens because the government has a "basic duty of representing the people in matters of public litigation" and serves "in a representative capacity on behalf of its people." *Stuart v. Huff*, 706 F.3d 345, 351-52 (4th Cir. 2013). "[T]he government's position is defined by the public interest, as well as the interests of a particular group of citizens." *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986). In fact, that public interest should include Plaintiffs' interests, just as it should the Proposed Intervenors' interests. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (stating that a government party should represent all citizens including those who may oppose the proposed intervenor's interest). Moreover, entities who have received government approvals or permits, as well as related trade associations, have been allowed to intervene on the side of the government in Administrative Procedure Act cases when the approval or permit was challenged.[2] Trade associations have also regularly intervened as of right to defend against challenges to MMPA

---

[2] *See Zeneca, Inc. v. Shalala*, 213 F.3d 161, 166 (4th Cir. 2000) (noting intervention on the side of the approving agency by company that received generic drug application approval that was subsequently challenged); *Kentuckians for Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 432 (4th Cir. 2003) (noting intervention on the side of the permitting agency by a mining industry trade association and the mineral rights owner whose land was subject to the permit).

authorizations related to offshore oil and gas exploration.[3]

The Federal Defendants do not adequately represent the interests of the Proposed Intervenors in this case. Indeed, the Proposed Intervenors' ultimate goal and interests in this litigation are necessarily broader than those of NMFS.[4] The Proposed Intervenors' goal is to conduct geophysical surveys, and the IHAs are a necessary means to that end. Proposed Intervenors will advocate to protect their business interests and their members' interests. Specifically, Proposed Intervenors' objectives are to ensure that the Atlantic OCS geophysical surveys are properly carried out as permitted, that the geophysical and oil and gas industries receive the benefit of those surveys, and that the Exploration Companies are allowed an opportunity to receive a return on their substantial investments.[5]

NMFS cannot adequately advocate for these unique business interests because it is obligated fulfill an important, but narrow, set of statutory roles under the MMPA, ESA, and

---

[3] *See, e.g.*, *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 901 (9th Cir. 2012) (noting intervention of Alaska Oil and Gas Association as defendant in challenge to MMPA incidental take regulations issued by U.S. Fish and Wildlife Service.); *Alaska Wilderness League v. Jewell*, 637 F. App'x 976, 977 (9th Cir. 2015) (same); *Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009) (same).

[4] The Fourth Circuit has employed a presumption of adequate representation when the government is a party but *only when* the movant and government share the ultimate objective in the lawsuit. *Aubrey v. McCabe Trotter & Beverly, P.C.*, No. CV 2:17-656-RMG, 2018 WL 3130614, at *2 (D.S.C. June 26, 2018) (presumption does not apply where "Crowfield's interest in the rights and duties created under its own governing documents is not identical with MTB's interest in defending itself from an FDCPA claim"); *cf. Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736-37 (D.C. Cir. 2003) ("governmental entities do not adequately represent the interests of aspiring intervenors," including regulated entities). NMFS and Proposed Intervenors do not share the same ultimate objective, and Proposed Intervenors' business interests are plainly "not identical" to NMFS's interests.

[5] The Proposed Intervenors' goals are aligned as a group, but their ultimate objectives differ. Whereas the Exploration Companies seek to conduct specific surveys to receive return on their investment, IAGC seeks to support the rights of all of its members, including those who may seek to conduct future surveys, and API seeks to protect its members' interest in the information to be developed through these and potential future surveys which will be used to support a strong, viable U.S. oil and natural gas industry.

NEPA.[6] That is especially so in the context of the injunctive relief sought by Plaintiffs here. Only Proposed Intervenors can adequately represent their economic and regulatory interests in any balancing of the hardships inquiry necessary to evaluate a request for injunctive relief. The Proposed Intervenors' goals are therefore sufficiently different from the Federal Defendants' goals to meet the minimal showing that Proposed Intervenors' interest may not be adequately represented.

In sum, Proposed Intervenors satisfy all four requirements for intervention as of right. Accordingly, Proposed Intervenors respectfully request the Court to grant their motion under Rule 24(a).

## C.  Alternatively, IAGC, the Exploration Companies, and API Should Be Granted Permissive Intervention.

In the alternative, Proposed Intervenors respectfully request that the Court grant permission to intervene under Rule 24(b). Proposed Intervenors meet the requirements for permissive intervention, as described below.

*First*, for the reasons set forth above, this motion is timely. This case is in its earliest stage, and no party will be prejudiced by intervention.

*Second*, the Proposed Intervenors squarely have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As set forth in their proposed Answer, Proposed Intervenors seek to defend the IHAs, biological opinion, and NEPA analysis that Plaintiffs seek to invalidate and enjoin. Proposed Intervenors deny that Plaintiffs are entitled to injunctive relief (or any relief at all) and seek to vigorously defend against such claims. *See Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. CV 9:12-610-RMG, 2012

---

[6] *See, e.g.*, 16 U.S.C. § 1361(2) (MMPA); 16 U.S.C. §§ 1531(b), 1536(a)(2) (ESA); 42 U.S.C. § 4332 (NEPA); *see S.C. Coastal Cons. League v. Pruitt*, 2018 WL 2184395, *9 (D.S.C. 2018).

WL 13008326, at *3 (D.S.C. Aug. 14, 2012) (granting permissive intervention to Georgia Ports Authority).

*Third*, intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Proposed Intervenors' participation creates no delay or prejudice to any party. Rather, intervention provides the Proposed Intervenors a fair opportunity to defend the IHAs that they invested significant resources to obtain. Allowing intervention so that Proposed Intervenors can defend their rights is the only equitable result under these circumstances. *Feller*, 802 F.2d at 729 (intervention "is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." (internal quotation marks and citation omitted)).

## IV.  CONCLUSION

Proposed Intervenors respectfully request that the Court grant their joint and unopposed motion to intervene as of right under Rule 24(a). Alternatively, Proposed Intervenors request permission to intervene under Rule 24(b). Their intervention will assist the fair, just, and efficient resolution of this lawsuit and ensure that those facing the greatest tangible harm from Plaintiffs' requested relief have a voice in this case.

DATED:  December 21, 2018

Respectfully submitted,

s/Sean Houseal

Richard Morton, Fed. Id. No. 5442
Sean Houseal, Fed. Id. No. 7676
WOMBLE BOND DICKINSON (US) LLP
301 S. College Street, Suite 3500
Charlotte, NC, 28202-6037
5 Exchange Street
Charleston, SC  29401
Telephone:  704-331-4993
                    843-720-4622
Facsimile:   843-723-7398
Email: Ric.Morton@wbd-us.com
           Sean.Houseal@wbd-us.com


Ryan P. Steen (PHV application forthcoming)
Jason T. Morgan (PHV application forthcoming)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone: 206-624-0900
Facsimile: 206-386-7500
Email: ryan.steen@stoel.com
           jason.morgan@stoel.com

*Counsel for Proposed Intervenor-Defendants*