UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE; CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTH CAROLINA COASTAL FEDERATION; OCEANA; ONE HUNDRED MILES; SIERRA CLUB; and SURFRIDER FOUNDATION,<br><br>    Plaintiffs,<br><br>v.<br><br>WILBUR ROSS, in his official capacity as the Secretary of Commerce; the NATIONAL MARINE FISHERIES SERVICE; and CHRIS OLIVER, in his official capacity as the Assistant Administrator for Fisheries,<br><br>    Defendants. | NO. 2:18-cv-03326-RMG<br><br><br>DECLARATION OF ERIK G. MILITO |

## **DECLARATION OF ERIK G. MILITO**

  1.  My name is Erik G. Milito. I make this Declaration on the basis of personal knowledge and am competent to testify to the matters stated in this Declaration, which are true and correct to the best of my knowledge, information, and belief.

  2.  I am the Vice President of Upstream and Industry Operations, of the American Petroleum Institute ("API"). API is the primary national trade association of the oil and natural gas industry. API represents more than 600 member companies involved in all aspects of the oil and natural gas industry, including exploration and production, and conduct much of the production, refining, marketing, and transportation of petroleum and petroleum products in the United States.

3. Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry capable of meeting the energy needs of the Nation in an efficient and environmentally responsible manner. Representation of the interests of the oil and gas industry in litigation is part of API's overall purpose, and API has on numerous occasions intervened as a party in litigation affecting those interests.

4. I received a Bachelor of Business Administration degree from the University of Notre Dame and a Juris Doctor from Marquette University.

5. Based on my more than 15-year career at API, I am familiar with our member companies' activities concerning geophysical exploration and oil and gas development on lands leased from the public, including lands on the outer continental shelf ("OCS").

6. Oil and gas development in the United States is carried out exclusively through private oil and gas companies. These companies acquire leases through a sealed bidding process, and then engage in exploration efforts that, if successful, will lead to production. API's members have extensive experience with successful exploration and development of oil and gas resources on the OCS.

7. Members of API are directly engaged in oil and gas exploration on the OCS and have been for decades among the principal developers of offshore leases throughout the United States. These members conduct the oil and gas exploration and development activities on OCS leases. In addition to leaseholders and operators, API's members include companies that conduct geophysical and geological ("G&G") exploration activities, and provide support services for offshore oil and gas development. These members provide, among other things, material, equipment, and other support services to federal lessees in developing their oil and gas resources.

8. Geophysical surveys are an essential part of oil and natural gas development on the OCS. Leasing, exploring, and developing an offshore site requires an investment of many millions of dollars. In order for API members to invest that kind of capital, they need reliable data on potential OCS sites that are most likely to produce oil and natural gas. Geophysical surveys provide that essential data.

9. The most recent geophysical surveys of the Atlantic OCS were performed in the 1980s. The data obtained in the 1980s is not sufficient for making well-informed decisions regarding the use and management of Atlantic OCS resources. The acquisition of new data with today's state-of-the-art technologies would allow for more accurate and realistic estimates of the potential resources of the Atlantic OCS. New geophysical data from the Atlantic OCS will allow industry operators to more accurately locate and dissect prospective areas for exploration. The acquisition of new geophysical data from the Atlantic OCS will substantially improve the evaluation of the environmental impacts of future leasing, exploration, and development decisions regarding the Atlantic OCS and generally result in better-informed decisions. Finally, should the Atlantic OCS be included in future leasing plans, the geophysical data acquired will reduce risk by increasing the likelihood that exploratory wells will successfully tap hydrocarbons and by decreasing the number of wells that need to be drilled in a given area, which minimizes the overall footprint of exploration.

10. API's interests in the planned Atlantic geophysical surveys are further demonstrated by its active participation in the administrative processes relevant to the government's consideration of the permit and authorization requests. The following summarizes API's key points of participation in these administrative processes.

a. On March 30, 2012, the Bureau of Ocean Energy Management ("BOEM") published a Federal Register notice announcing the publication of the Draft Programmatic Environmental Impact Statement ("PEIS") for Proposed G&G Exploration on the Mid- and South Atlantic OCS. 77 Fed. Reg. 19,321 (Mar. 30, 2012). On July 2, 2012, API, in conjunction with other industry associations, filed detailed comments on the Draft PEIS in response to the notice.

b. On March 7, 2014, BOEM issued a Federal Register notice requesting comments on its Final PEIS for Proposed G&G Exploration on the Mid- and South Atlantic OCS, and API filed detailed comments on the Final PEIS in response to the notice. *See* 79 Fed. Reg. 13,074 (Mar. 7, 2014).

c. On March 31, 2015, BOEM requested public comments on pending G&G permit applications for the Mid- and South Atlantic OCS. On April 29, 2015, API, in conjunction with other trade associations, filed a detailed comment letter expressing, among other things, API's support for the approval of the permit applications and addressing a variety of issues relevant to BOEM's consideration of those applications.

d. On July 29, 2015, the National Marine Fisheries Service ("NMFS") issued a Federal Register notice requesting public comments on four pending applications for marine mammal incidental harassment authorizations ("IHAs") relating to the pending G&G permit applications for the Mid- and South Atlantic OCS. 80 Fed. Reg. 45,195 (July 29, 2015). On August 28, 2015, API, in conjunction with other trade associations, filed comments supporting the issuance of the requested IHAs and addressing a variety of issues relevant to NMFS's consideration of the IHA applications.

   e. On June 6, 2017, NMFS issued another notice in the Federal Register requesting public comments on proposed IHAs relating to the Atlantic OCS G&G surveys. On July 21, 2017, API, in conjunction with other trade associations, again submitted written comments supporting the issuance of the requested IHAs and addressing various issues related to the proposed IHAs, including the practicability of some of the proposed mitigation measures.

11. For these reasons, API and its members have a direct interest in this litigation and the planned Atlantic seismic surveys that will be conducted by the IHA recipients (the "Exploration Companies"). In order to conduct those surveys, the Exploration Companies need the IHAs that are the subject of this lawsuit. The Plaintiffs seek to vacate and/or enjoin the IHAs and thereby derail the Exploration Companies' planned surveys on the Atlantic OCS. If granted, the Plaintiffs' requested relief would have substantial negative impacts on API and its members by blocking the geophysical activities that have been authorized and impairing the collection of geophysical data necessary for making informed decisions about whether any further oil and gas exploration, or development should be pursued on the Atlantic OCS.

12. If successful, the Plaintiffs' lawsuit will, at a minimum, delay the Exploration Companies' ability to conduct their authorized activities, and thereby impair the ability of API's members to acquire this necessary data. Any injunction could also impose new burdens on geophysical surveys and further delay a permitting process that has already encompassed an unprecedented length of time. Thus, resolution of this lawsuit in favor of the Plaintiffs will practically impair and impede the shared and significantly protectable interests of API.

13. Conversely, a favorable outcome for the defendants in this lawsuit would create an opportunity for the lawful exploration of the Atlantic OCS by API's members. Such an

outcome would also help API achieve its mission to ensure a strong, viable, U.S. oil and natural gas industry capable of meeting the energy needs of the Nation in an efficient and environmentally responsible manner. A favorable outcome for the defendants would also further API's interest in the responsible and correct application of existing federal regulations and laws, thereby providing more regulatory, economic, and conservation certainty for the geophysical industry and for those who depend upon it.

  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information and belief.

  EXECUTED in Washington, D.C., this 19th day of December 2018.

*[signature]*

ERIK G. MILITO