UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| City of Beaufort, City of Charleston, City of Folly Beach, City of Isle of Palms, City of North Myrtle Beach, South Carolina Small Business Chamber of Commerce, Town of Bluffton, Town of Briarcliffe Acres, Town of Edisto Beach, Town of Hilton Head Island, Town of James Island, Town of Kiawah Island, Town of Mount Pleasant, Town of Pawley's Island, Town of Port Royal, Town of Seabrook Island, Town of Awendaw,<br><br>                Plaintiffs,<br><br>and<br><br>State of South Carolina, ex rel Alan Wilson, Attorney General,<br><br>                Intervenor,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE, CHRIS OLIVER, in his official capacity as the Assistant Administrator for Fisheries, and WILBER ROSS, in his official capacity as the Secretary of Commerce,<br><br>                Defendants. | **No.: 2:18-cv-03326-RMG**<br>**(Consolidated with 2:18-cv-3327-RMG)**<br><br>**COMPLAINT**<br>**IN INTERVENTION**<br>**OF**<br>**STATE OF SOUTH CAROLINA**<br>**EX REL**<br>**ALAN WILSON, ATTORNEY**<br>**GENERAL** |

1. This Action is brought in response to five incidental harassment authorizations ("IHAs") issued on November 30, 2018 by Defendant National Marine Fisheries Service ("NMFS") to allow five overlapping geophysical or seismic airgun surveys to occur simultaneously along the Atlantic Outer Continental Shelf ("OCS"), including the waters off of South Carolina's coast, as

well as a Biological Opinion, Environmental Assessment and Finding of No Significant Impact ("FONSI") issued as part of NMFS's duties under 2:18-cv-03327-RMG 2 the Marine Mammals Protection Act, the Endangered Species Act, and the National Environmental Policy Act.

2-Dimension (2-D) geophysical surveys use seismic airguns to explore and evaluate deep geologic formations and are designed to cover thousands of square miles looking for potential oil and gas reserves beneath the ocean floor in order to allow offshore oil and gas drilling. The acoustic sources consist of airgun arrays while the receivers consist of towed cables with hydrophones. When an airgun array is activated, an acoustic energy bubble pulse is emitted and reflected or refracted back from the seafloor and subsurface interfaces.

3. The geophysical surveys involve blasting these acoustic pulses at the ocean floor approximately every ten seconds, twenty-four hours a day, for months at a time, producing extreme loud noises which can be audible for hundreds of kilometers and, under certain circumstances, thousands of kilometers from the source.

4. The NMFS authorizations allow this seismic blasting activity to occur within the U.S. Exclusive Economic Zone (EEZ) (i.e., to 200 nautical miles) from Delaware to approximately Cape Canaveral, Florida, including off the coast of South Carolina, as well as additional waters out to 350 nautical miles from shore.

5. Every coastal municipality in the state of South Carolina has passed resolutions opposing seismic airgun surveying, including all of the named Plaintiff Cities and Towns, because of the harm that it would cause to the marine environment that supports vibrant coastal economies, including tourism and commercial fishing. Plaintiff Cities and Towns have proprietary interests

in the marine resources, tax revenues and aesthetics that will be harmed along the coast if seismic airgun surveying is allowed to proceed.

6. The South Carolina Small Business Chamber of Commerce has opposed seismic airgun surveying since January of 2015 because of the economic harm it would cause to coastal small businesses related to the commercial and sports fishing industries and tourism industry.

7. The coast of South Carolina similarly provides habitat for diverse species which are popular for viewing by tourists and locals alike, including whales, dolphins, sea turtles and other marine life.

8. Seismic testing and oil drilling off of South Carolina's coast stands to have a tremendous impact on the important tourism industry of this State. The four coastal counties of Horry, Georgetown, Charleston and Beaufort generate 71% of the state total Accommodations Tax receipts. In other words, these four coastal counties alone account for more than $13.5 Billion in tourism spending annually. From 2007 to 2014, the economic value of businesses making use of ocean and coastal waters in the state grew from $37 billion to $44 billion, according to the most recent National Ocean Economic Program report using employment and wage data to track trends. In the same time period, jobs grew from 433,183 to 445,398. Total wages also grew from $14.6 billion to $17.2 billion. This economic growth results from and is reliant on, in large part, a vibrant and healthy marine ecosystem.

9. Seismic testing also stands to negatively impact and even destroy the coastal fishing industries in South Carolina. While the commercial fishing industry is declining in the state, wild-caught seafood still consists of about half of consumption. Furthermore, the recreational fishing industry is booming, and worth about $600 million per year in South Carolina.

10. Seismic airgun surveys would irreparably harm marine life, in large numbers and with a large impact, and the communities and businesses that use and enjoy this marine life and rely on it for their economic livelihoods. The seismic surveying authorized by the Defendant NMFS is in violation of the Marine Mammal Protection Act, the Endangered Species Act, the National Environmental Policy Act and the Administrative Procedures Act.

## PARTIES

11. Alan Wilson, is the Attorney General of South Carolina, the State's chief legal officer with authority under State law to take action in the public interest including moving to intervene in this lawsuit to protect this State's economic, recreational and tourism interests and quality of life. He brings this action on behalf of the State of South Carolina as the State of South Carolina ex rel Alan Wilson, Attorney General (Attorney General).

12. The Attorney General incorporates by reference Paragraphs 11 – 31, inclusive, of the Plaintiffs' Complaint.

## JURISDICTION AND VENUE

13. The Attorney General incorporates by reference Paragraphs 32 – 34 of Plaintiffs' Complaint.

## LEGAL BACKGROUND

14. The State incorporates by reference Paragraphs 35 and 36 of Plaintiffs' Complaint regarding the Marine Mammal Protection Act.

15. The Attorney General incorporates by reference Paragraphs 37 – 39 of Plaintiffs' Complaint regarding the Endangered Species Act.

16. The Attorney General incorporates by reference Paragraphs 40 – 46 of Plaintiffs' Complaint regarding the National Environmental Policy Act.

17. The Attorney General incorporates by reference Paragraph 47 of Plaintiffs' Complaint regarding the Administrative Procedures Act.

## ALLEGATIONS OF FACT

18. The Attorney General incorporates by reference above paragraphs 1-12 of this Complaint in Intervention.

19. The Attorney General, on information and belief, incorporates by reference Paragraphs 49 - 75 of Plaintiffs' Complaint.

20. There is still the possibility that seismic survey information would not be used if the Atlantic is not offered for future oil and gas leasing.

21. Any data from seismic surveys may still become outdated if leasing is far in the future.

22. The development of lower impact survey technology may available before future geophysical and geological information may be needed .

## FIRST CAUSE OF ACTION
(Lack of authority of NMFS as to lands affected by ultra vires Order 13795 )

23. Pursuant to Article IV, § 3, cl. 2 of the United States Constitution, "Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States. . . ."  Notwithstanding this express constitutional reservation of power to Congress, however, the Outer Continental Shelf Lands Act ("OCLSA") (43 U.S.C.A. § 1341), has delegated to the President the limited power "from time to time [to]

5

withdraw from disposition any of the unleased lands of the Outer Continental Shelf." Thus, § 1341 of the OCSLA violates separation of powers in that it delegates to the President authority expressly reserved to Congress

24. On April 28, 2017, the President issued Executive Order 13795 entitled "Implementing an America-First Offshore Energy Strategy," which reversed his predecessor's December 20, 2016 withdrawal from disposition of the unleased lands belonging to the United States beneath the Atlantic Ocean, including those off the South Carolina Coast. The Order states that it is based upon OCSLA. Therefore, to the extent that OCSLA is unconstitutional, Order 13795 is ultra vires.

25. However, Congress did not bestow upon the President the power to revoke a previous withdrawal in the OCSLA and no other statute does so. Assuming §1341 of the OCLSA does not violate the non-delegation doctrine, the Act still does not provide the President with intelligible principles of direction or guidance for any revocation of an earlier withdrawal. Therefore, the Act should be confined to its textual language – "withdrawal" – and not expanded to include reversal or revocation of any previous withdrawal. Accordingly, Order 13795 is ultra vires and without legal effect.

26. The NMFS lacked authority to proceed as to lands affected by Order 13795 because the Order is ultra vires.

## SECOND CAUSE OF ACTION
### (Arbitrary, Capricious and Unlawful Action under the MMPA)

27. Each of the above allegations is incorporated by reference into this cause of action.

28. The Attorney General incorporates by reference Paragraphs 77 – 92 of Plaintiffs' Complaint on information and belief.

29. NMFS's issuance of the IHAs violates the MMPA and is arbitrary, capricious, and an abuse of discretion, in violation of the APA. 16 U.S.C. § 1371(a); 50 C.F.R. § 216.107; 5 U.S.C. § 706.

## THIRD CAUSE OF ACTION
### (Arbitrary, Capricious and Unlawful ESA Biological Opinion)

30. Each of the above allegations is incorporated by reference into this cause of action.

3127. The Attorney General incorporates by reference Paragraphs 95 – 100 of Plaintiffs' complaint on information and belief.

32. On information and belief, NMFS concluded that seismic airgun surveys are not likely to jeopardize the continued existence of any threatened or endangered species, despite a complete lack of factual basis for such a conclusion. Thus, NMFS's failure to provide a basis for its conclusion in the Biological Opinion or elsewhere, and is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, in violation of the APA, 5 U.S.C. §706(2).

## FOURTH CAUSE OF ACTION
### (Arbitrary, Capricious and Unlawful ESA Incidental Take Statement)

33. Each of the above allegations is incorporated by reference into this cause of action.

34. The Attorney General incorporates by reference Paragraph 103 of Plaintiffs' Complaint on information and belief.

35. On information and belief, NMFS determined that loggerhead sea turtles and leatherback sea turtles may be found within the action area are expected to be exposed to the active acoustic

sources associated with the proposed action at a level that may result in adverse effects. On information and belief, while NMFS authorized the take of endangered sea turtles in its Biological Opinion, it failed to issue an incidental take statement limiting the number of takes. This failure to quantify the number of takes is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, in violation of the APA, 5 U.S.C. § 706(2).

## FIFTH CAUSE OF ACTION
### (Arbitrary, Capricious and Unlawful NEPA Analysis)

36.  Each of the above allegations is incorporated by reference into this cause of action.

36.  The Attorney General incorporates by reference Paragraphs 106 - 114 of Plaintiffs' Complaint including, on information and belief, any fact allegations therein.

38 . The EIS or EA must rely on the best available scientific information.  NMFS violated NEPA by relying upon outdated and inaccurate information.

## SIXTH CAUSE OF ACTION
### (Common Law Public Nuisance)

39.  Each of the above allegations is incorporated by reference into this cause of action.

40.  Based upon the facts and circumstances heretofore alleged, Defendants' actions constitute a common law public nuisance under South Carolina law.

41.  Based upon the facts and circumstances heretofore alleged, Defendants' actions constitute a nuisance upon the adjacent landowner, the State of South Carolina, owner of the submerged lands pursuant to the Submerged Lands Act, 43 U.S.C. § 1301 et seq.

42.  Based upon the facts and circumstances heretofore alleged, Defendants' actions constitute a federal common law nuisance.

## SEVENTH CAUSE OF ACTION
### (Trespass )

43. Each of the above allegations is incorporated by reference into this cause of action.

44. Based upon the facts and circumstances heretofore alleged, defendants' actions constitute a trespass against the State of South Carolina, owner of the adjacent lands under the Submerged Lands Act, 43 U.S.C. § 1301 et seq.

## EIGHTH CAUSE OF ACTION
### (Outer Continental Shelf Lands Act )

45. Each of the above allegations is incorporated by reference into this cause of action.

46. Based upon the facts and circumstances heretofore alleged, defendants' actions violate the Outer Continental Shelf Lands Act, *supra,* 43 U.S.C. 1331 et seq. OCSLA extends the Constitution and laws and civil and political jurisdiction of the United States "to the subsoil and seabed of the outer continental shelf. . . ." § 1331(a)(l). OCSLA also expressly allows adjacent-state law to the extent applicable and not inconsistent with federal law. § 1333(a)(2)(A). Therefore, the state law violations heretofore alleged are made applicable by the OCSLA.

## NINTH CAUSE OF ACTION
### (Admiralty )

47. Each of the above allegations is incorporated by reference into this cause of action.

48. Based upon the facts and circumstances heretofore alleged, Defendants' actions violate maritime law. Such actions constitute a tort under the admiralty jurisdiction of the United States and this Court. 28 U.S.C. § 1333.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Attorney General respectfully requests that this Court:

A. Issue an injunction prohibiting the five seismic airgun surveys authorized by NMFS to occur along the Atlantic OCS;

B. Issue an injunction against any seismic airgun surveying authorizations along the Atlantic OCS without compliance with the MMPA, ESA, NEPA and APA;

C. Issue a declaratory ruling that the seismic airgun surveying authorizations are in violation of the Marine Mammal Protection Act, Endangered Species Act, National Environmental Policy Act, Outer Continental Shelf Lands Act and/or Administrative Procedure Act;

D. Issue a declaratory ruling that the NMFS lacked authority to proceed as to lands affected by Order 13795 because the Order is ultra vires.

E. Enter a declaratory judgment that the Defendants have violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., its implementing regulations, 40 C.F.R. §§ 1500 et seq., by failing to prepare, circulate for comment and consider in their decision-making process a detailed Environmental Impact Statement concerning the proposed IHAs; by preparing an inadequate EA that fails to consider a reasonable range of alternatives, fails to properly assess the alternatives presented, and fails to adequately analyze and disclose the environmental impacts of the proposed IHAs.

F. At the very least, not allow seismic testing to go forward until there has been ordered, received and evaluated by the Court an objective, comprehensive study of the impact of such testing upon South Carolina's environment and economy

H.  Award Plaintiffs all costs and expenses of this action; and

I.  Award such additional relief as the Court deems proper.

                                                Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: rcook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: esmith@scag.gov

T. PARKIN C. HUNTER
Senior Assistant Attorney General
Federal ID No. 2018
Email: phunter@scag.gov

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone:  (803) 734-3680
Fax:  (803) 734-3677

February 21, 2019                                Counsel for the State ex rel Wilson