IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE; CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTH CAROLINA COASTAL FEDERATION; OCEANA; ONE HUNDRED MILES; SIERRA CLUB; and SURFRIDER, FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>WILBUR ROSS, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF COMMERCE; NATIONAL MARINE FISHERIES SERVICE; AND CHRIS OLIVER, IN HIS OFFICIAL CAPACITY AS THE ASSISTANT ADMINISTRATOR FOR FISHERIES,<br><br>Defendants. | No.: 2:18-cv-3326-RMG<br>(Consolidated with 2:18-cv-3327-RMG)<br><br>**MEMORANDUM OF PLAINTIFF-INTERVENORS STATES OF MARYLAND, CONNECTICUT, DELAWARE, MAINE, NEW JERSEY, NEW YORK, AND NORTH CAROLINA AND COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA IN FURTHER SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiff-Intervenors States of Maryland, Connecticut, Delaware, Maine, New Jersey, New York, and North Carolina and Commonwealths of Massachusetts and Virginia ("the States") respectfully join Plaintiffs' Motion for a Preliminary Injunction (ECF 124), adopt Plaintiffs' arguments in support of that Motion (ECF 124-1), and submit this brief memorandum in further support of that Motion.

## **DISCUSSION**

A plaintiff is entitled to a preliminary injunction upon showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Di Biase*

*v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). The Plaintiffs have explained, in great detail, why their motion satisfies the first three of these requirements. As to the fourth, the States file this memorandum to expand on the reasons why granting a preliminary injunction would be decidedly in the public interest.

More specifically, the very fact that ten Atlantic Coast states have intervened in this litigation to oppose the National Marine Fisheries Service's incidental harassment authorizations (the "IHAs") underscores that an injunction would serve the public interest. The intervening states form an almost unbroken chain along the Atlantic Coast, from South Carolina all the way north to Maine. The States' opposition to the IHAs is well-founded, for seismic testing would harass vast numbers of marine mammals and other wildlife. By the National Marine Fisheries Service's own calculation, whales, dolphins, and porpoises off the coasts of states from Delaware to Florida will be exposed to repeated sound blasts louder than 160 decibels, resulting in more than 373,000 instances of marine mammal harassment. *See* 83 Fed. Reg. 63,268, 63,376-79 tbls. 15, 16, 17 (Dec. 7, 2018).

The States' economies, moreover, depend heavily on coastal tourism and recreation—as the Bureau of Ocean Energy Management ("BOEM") has recognized: "Beach visitation, swimming, wildlife viewing, boating, and fishing are . . . popular coastal activities across the Atlantic states"; such "[o]cean-dependent tourism" is a "a significant economic use for the Mid-Atlantic [and] South Atlantic . . . planning areas (accounting for over $6.7 billion . . . and $6 billion in value added in 2009, respectively, to adjacent coastal areas)." Exh. 1, BOEM, 2019-2024 National Outer Continental Shelf Oil and Gas Leasing Draft Proposed Program at 6-28 to -29 (Jan. 2018) ("2019-2024 Draft Proposed Program"), available at https://www.boem.gov/NP-

Draft-Proposed-Program-2019-2024/ (last visited March 5, 2019).[1] Ocean-dependent tourism makes a substantial contribution to states' economies. *Id.* To take one example of that impact, "in 2009, recreational fishing expenditures resulted in total value added in the Mid-Atlantic economy of more than $2 billion (with North Carolina accounting for more than half) . . . ." *Id.*

The States' position in this litigation, moreover, is consistent with broader opposition among state and local governments on the Atlantic Coast to seismic testing (and offshore drilling). As the Court is aware, sixteen local governments have brought their own action, consolidated with this one, challenging the IHAs. The State of South Carolina has intervened on the side of the local government plaintiffs. Beyond this litigation, the Governors of nearly every Atlantic Coast state from South Carolina to Massachusetts, including nearly all of the ten intervenor states, have written the Secretaries of Commerce and the Interior to express their strong opposition to seismic testing and offshore drilling. *See* Exh. 2, Ltr. from Govs. of N.C., S.C., Conn., N.Y., Md., Mass., Del., Va., R.I. & N.J. to The Hon. W.L. Ross, Jr., Sec'y of Commerce & The Hon. R. Zinke, Sec'y of Interior (Dec. 20, 2018). And by one count, no fewer than 248 local governments have passed resolutions opposing seismic testing or offshore drilling in the Atlantic Ocean. *See* Exh. 3, Grassroots Opposition to Offshore Drilling and Exploration in the Atlantic Ocean and off Florida's Gulf Coast at 4-12, available at https://usa.oceana.org/climate-and-energy/grassroots-opposition-offshore-drilling-and-exploration-atlantic-ocean-and) (last visited March 5, 2019) (listing and linking to resolutions, as well as comments and other documents). In addition, as many of the States noted in their comments to BOEM opposing issuance of the IHAs, "[m]ore than 35,000 businesses and 500,000 commercial fishing families along the Atlantic Coast from Maine to Florida oppose seismic testing and offshore oil and gas drilling exploration because it threatens

---

[1] All exhibits are attached to the Declaration of John B. Howard, Jr.

the coastal ecosystem on which 1.4 million commercial fishing, tourism, and recreation jobs depend." Exh. 4, Ltr. from Attys. Gen'l of Md., Conn., Del., D.C., Mass., N.Y., N.C., Penn., & R.I., to J. Harrison, Natl. Marine Fisheries Serv, at 4 (July 21, 2017).

The States' opposition to the proposed seismic testing activities is consistent with their more general policies of promoting responsible and appropriate use of marine and coastal resources. For instance, all of the States have adopted coastal zone management programs pursuant to the federal Coastal Zone Management Act, under which they work in partnership with the National Oceanic and Atmospheric Administration ("NOAA") to protect, restore, and responsibly develop coastal and marine resources. *See* 16 U.S.C. §§ 1451 *et seq.*; Exh. 5, NOAA, Office of Coastal Management, Coastal Management Programs, available at https://coast.noaa.gov/czm/mystate/ (listing and linking to state coastal zone management plans) (last visited March 5, 2019). And, of particular relevance here, a number of States have adopted policies relating specifically to offshore drilling in their coastal zones. *See* Del. Code Ann. tit. 7, § 7003 ("Notwithstanding the provisions of any law, rule, or regulation to the contrary, offshore drilling for oil and natural gas shall be prohibited in the coastal zone and any other state waters and no permit may be issued for or in connection with the development or operation of any facility or infrastructure associated with offshore drilling for oil or natural gas, whether proposed for within or outside of Delaware's territorial waters."); 15A N.C. Admin. Code 7M.0403(f)("All energy facilities in or affecting the use of public trust waters and adjacent lands or coastal resource shall be sited and operated" according to defined criteria, including, for example that "[a]ctivities that could result in significant adverse impacts on resources of the coastal area, including marine and estuarine resources and wildlife resources, . . . and significant adverse impacts on the use of public trust waters and adjacent lands in the coastal area shall be avoided unless site specific

4

information demonstrates that each such activity will result in no significant adverse impacts on the use of public trust waters and adjacent lands or coastal resources . . . .").

Additionally, all of the States submitted comments opposing BOEM's proposal to open up areas of the Atlantic Ocean to new oil and gas leasing and drilling. *See, e.g.*, Exh. 6, Comments of Attys. Gen'l of Md., Calif., Conn., Maine, Mass., N.J., N.Y., N.C., Ore., R.I., Va., & Wash. on 2019-2024 Draft Proposed Outer Continental Shelf Oil & Gas Leasing Prog. & Not. of Intent to Prepare a Programmatic Envtl. Impact Statement (BOEM-2017-0074) (March 9, 2018) at 4 ("State Comments on Proposed Leasing Program") (discussing incompatibility of offshore drilling with "states' economies that have developed around other coastal and marine uses—including tourism, recreation, shipping, commercial fishing, and increasingly, offshore wind development"); *id.* at 8 (noting that offshore drilling "all but guarantees that oil spills—[including] large ones—will sully our states' waters and coastlines"); Exh. 7, Ltr. from Attys. Gen'l of N.C., Calif., Conn., Del., Maine, Mass., Md., N.J., N.Y., Ore., R.I., & Va. to R. Zinke, Sec'y of the Interior (Feb. 1, 2018).

The States' vigorous opposition should weigh heavily in the public interest analysis. *See, e.g., Johnson v. Collins Entm't Co.*, 199 F.3d 710, 726 (4th Cir. 1999) ("'The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction,'" and "'[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies.'" (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717-18 (1996) (internal citations omitted))); *Carcano v. McCrory*, 203 F. Supp. 3d 615, 653 (M.D.N.C. 2016) ("It is in the public interest to enforce federal anti-discrimination laws in a fashion that also maintains long-standing State laws designed to protect privacy and safety.").

Congress itself, moreover, has recognized the importance of states' views and policy determinations when it comes to management of the Outer Continental Shelf.  The Outer Continental Shelf Lands Act ("OCSLA") directs the Secretary of the Interior to consider these views in formulating plans to lease areas of the Outer Continental Shelf for oil and gas exploration: the Secretary must consider, among other things, the "laws, goals, and policies of affected States which have been specifically identified by the Governors of such States as relevant matters for the Secretary's consideration." 43 U.S.C. § 1344(a)(2)(F).  Although this litigation does not challenge the validity of any lease or leasing plan, Congress's solicitude for states' policy views in OCSLA confirms that it is appropriate for this Court to exhibit similar solicitude for the States' views here.

Nor does any purported public interest in a federal policy of developing offshore fossil fuel resources counsel against a preliminary injunction.  The purpose of seismic testing is, of course, to advance the development of such resources—yet the Atlantic Ocean is currently off-limits for new oil and gas leasing, under the five-year National Outer Continental Shelf Oil and Gas Leasing Program in effect today.  *See* 43 U.S.C. § 1344(a); Exh. 8, Dep't of the Interior, BOEM, Record of Decision & Approval of the 2017-2022 Outer Continental Shelf Oil & Gas Leasing Prog., at 3 (Jan. 17, 2017).  To be sure, certain areas where seismic testing would occur have been *proposed* for new leasing in BOEM's Draft Proposed Program.  *See* Exh. 1, 2019-2024 Draft Proposed Program.  Yet that plan must undergo at least two more iterations before becoming final, and faces strong opposition from states and other interested parties—including all of the States submitting this pleading.  *See id.* at 3 (explaining that the Draft Proposed Program "is the first in a series of three preliminary proposals made by the Secretary consistent with [OCSLA], before he may take final action to approve a 2019-2024 Program"); Exh. 6, State Comments on Proposed Leasing Program (arguing that BOEM has failed to explain why opening up areas off the Atlantic Coast

6

for new offshore drilling is justified under OCSLA). It remains to be seen whether the areas to be affected by seismic testing will be included in BOEM's final plan and, if so, whether the plan will survive judicial review. Consequently, the seismic testing at issue here could well turn out to be wholly unnecessary. The lack of any need for immediate seismic testing confirms that the public interest favors a preliminary injunction.

In sharp contrast with federal proposals for more aggressive fossil fuel development, moreover, the States have their *own* countervailing energy policies. In various ways, our States seek to transition *away* from reliance on fossil fuels through, for example, participation in the Regional Greenhouse Gas Initiative,[2] implementation of renewable portfolio standards,[3] or provision of financing and other incentives to develop and use renewable energy sources.[4] These policies offset any asserted public interest in federal promotion of offshore fossil fuel exploration.

---

[2] *See* RGGI, Inc., Regional Greenhouse Gas Initiative program overview (https://www.rggi.org/program-overview-and-design/elements); *see, e.g.*, 7 Del. C. § 6043, *et seq.*; 7 DE Admin. Code § 1147; Md. Code Ann., Envir. § 2-1002(g) (governing Maryland's participation in the Regional Greenhouse Gas Initiative).

[3] *See, e.g.*, 26 Del. C. § 351, *et seq.* (governing Delaware's renewable portfolio standards); Md. Code Ann., Pub. Util. §§ 7-701 *et seq.* (governing Maryland's renewable energy portfolio program); 50 N.J. Reg. 1394(b) (June 18, 2018) (directing the development of an updated Energy Master Plan to have New Jersey draw 100 percent of its energy from clean sources by 2050 and facilitating New Jersey's Offshore Wind Strategic Plan, as outlined in 50 N.J. Reg. 887(a)) (Feb. 20, 2018); Exh. 9, N.Y.S. Pub. Serv. Comm'n, Order Adopting a Clean Energy Standard (Aug. 1, 2016) (requiring that 50 percent of New York's electricity come from renewable sources by 2030); N.C. Gen. Stat. § 62-133.8(h) (subjecting N.C. electric public utilities to a renewable energy standard in 2018 of 10% of retail sales and 12.5% in 2021 and thereafter); *see also* Exh. 10, Solar Energy Industries Ass'n, Top 10 Solar States, available at https://www.seia.org/research-resources/top-10-solar-states-0 (last visited March 5, 2019) (indicating that N.C. is second only to California in installed solar capacity).

[4] *See, e.g.*, Conn. Gen. Stat. § 16-245 (setting forth Connecticut's statutory renewable energy standards); *id.* § 16-245n (providing statutory authority for the Connecticut Green Bank); 7 Del. C. § 8057 (setting forth renewable energy incentives); Md. Code Ann., Pub. Util. § 7-709 (setting forth Maryland's renewable energy credits scheme); Exh. 11, N.Y.S. Energy Research & Dev. Auth., NY-Sun Making solar affordable for all New Yorkers, available *at* https://www.nyserda.ny.gov/All-Programs/Programs/NY-Sun (last visited March 5, 2019)

## **CONCLUSION**

For the foregoing reasons and those stated in the Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction (ECF 124-1), the States respectfully request that the Court enter the requested preliminary injunction.

Respectfully submitted,

/s/ W. Jefferson Leath, Jr.
W. Jefferson Leath, Jr. (Fed. Bar No. 2627)
Jefferson Leath, Esq., LLC
40 Calhoun Street, Suite 400
Charleston, SC  29401
Telephone: (843) 853-5353
jeff@seekingslaw.com

*Counsel for the States of Maryland, Connecticut, Delaware, Maine, New Jersey, and New York and the Commonwealths of Massachusetts and Virginia*

---

(providing portal for information regarding financial incentives and other programs to promote installation of solar electric systems in New York).

BRIAN E. FROSH
ATTORNEY GENERAL OF MARYLAND

Joshua M. Segal (PHV)
  Assistant Attorney General
John B. Howard, Jr. (PHV)
  Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6446
Facsimile: (410) 576-7036
jsegal@oag.state.md.us
jbhoward@oag.state.md.us

Emily A. Vainieri (PHV)
  Assistant Attorney General
Office of the Attorney General
Maryland Department of Natural Resources
580 Taylor Avenue, C-4
Annapolis, MD 21401
Telephone: 410-260-8352
Facsimile: 410-260-8364
emily.vainieri1@maryland.gov

*Counsel for the State of Maryland*

WILLIAM TONG
ATTORNEY GENERAL OF CONNECTI-CUT

Daniel Salton (PHV)
  Assistant Attorney General
Office of the Attorney General
P.O. Box 120, 55 Elm Street
Hartford, CT 06141-0120
Telephone: (860) 808-5250
Facsimile: (860) 808-5387
daniel.salton@ct.gov

*Counsel for the State of Connecticut*

| | |
|---|---|
| KATHY JENNINGS<br>ATTORNEY GENERAL OF DELAWARE<br><br>Ilona Kirshon (PHV)<br>  Deputy State Solicitor<br>David J. Lyons (PHV)<br>  Deputy Attorney General<br>Jameson A.L. Tweedie (PHV)<br>  Deputy Attorney General<br>Department of Justice<br>Carvel State Building, 6th Floor<br>820 North French Street<br>Wilmington, DE 19801<br>Telephone: (302) 577-8372<br>Facsimile: (302) 577-6630<br>ilona.kirshon@delaware.gov<br>david.lyons@delaware.gov<br>jameson.tweedie@delaware.gov<br><br>*Counsel for the State of Delaware* | AARON FREY<br>ATTORNEY GENERAL OF MAINE<br><br>Margaret A. Bensinger (PHV)<br>  Assistant Attorney General<br>6 State House Station<br>Augusta, ME 04333-0006<br>Telephone: (207) 626-8578<br>Facsimile: (207) 626-8812<br>peggy.bensinger@maine.gov<br>jerry.reid@maine.gov<br><br>*Counsel for the State of Maine* |
| MAURA HEALEY<br>ATTORNEY GENERAL OF MASSACHUSETTS<br><br>Matthew Ireland (PHV)<br>  Assistant Attorney General<br>Megan M. Herzog (PHV)<br>  Special Assistant Attorney General<br>Environmental Protection Division<br>One Ashburton Place, 18th Floor<br>Boston, MA 02108<br>Telephone: (617) 727-2200<br>Facsimile: (617) 727-9665<br>matthew.ireland@mass.gov<br>megan.herzog@mass.gov<br><br>*Counsel for the Commonwealth of Massachusetts* | GURBIR S. GREWAL<br>ATTORNEY GENERAL OF NEW JERSEY<br><br>Dianna E. Shinn (PHV)<br>Deputy Attorney General<br>R.J. Hughes Justice Complex<br>25 Market Street<br>P.O. Box 093<br>Trenton, NJ. 08625-0093<br>Telephone: (609) 376-2789<br>Facsimile: (609) 341-5030<br>dianna.shinn@law.njoag.gov<br><br>*Counsel for the State of New Jersey* |

| | |
|---|---|
| LETITIA JAMES<br>ATTORNEY GENERAL OF NEW YORK<br><br>Andrew G. Frank (PHV)<br>  Assistant Attorney General<br>New York State Attorney General's Office<br>28 Liberty Street<br>New York, NY. 10005<br>Telephone: (212) 416-8271<br>Facsimile: (212) 416-6007<br>andrew.frank@ag.ny.gov<br><br>*Counsel for the State of New York* | JOSHUA H. STEIN<br>ATTORNEY GENERAL OF<br>NORTH CAROLINA<br><br>/s/ William Harkins<br>William Harkins ((Fed. Bar No. 10334)<br>  Assistant Attorney General<br>Marc Bernstein (PHV)<br>  Special Deputy Attorney General<br>Ryan Park (PHV)<br>  Deputy Solicitor General<br>North Carolina Department of Justice<br>PO Box 629<br>Raleigh, NC 27602<br>Telephone: (919) 716-6535<br>Facsimile: (919) 716-6761<br>wharkins@ncdoj.gov<br>mbernstein@ncdoj.gov<br>rpark@ncdoj.gov<br><br>*Counsel for the State of North Carolina* |
| MARK R. HERRING<br>ATTORNEY GENERAL OF VIRGINIA<br><br>Paul Kugelman (PHV)<br>  Senior Assistant Attorney General<br>Office of the Virginia Attorney General<br>202 North 9th Street<br>Richmond, VA 23219<br>Telephone: (804) 786-3811<br>Facsimile: (804) 786-2650<br>pkugelman@oag.state.va.us<br><br>*Counsel for the Commonwealth of Virginia* | |

March 5, 2019
Charleston, South Carolina