UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILBUR ROSS, in his official capacity as the Secretary of Commerce, et al., <br><br> Defendants. | Civil Action No. 2:18-cv-03326-RMG (Consolidated with 2:18-cv-3327-RMG) <br><br><br> RESPONSE BRIEF IN OPPOSITION TO CITY OF BEAUFORT, ET AL.'S MOTION FOR PRELIMINARY INJUNCTION BY INTERVENOR-DEFENDANTS THE INTERNATIONAL ASSOCIATION OF GEOPHYSICAL CONTRACTORS, CGG SERVICES (U.S.) INC., GX TECHNOLOGY CORPORATION, SPECTRUM GEO INC., TGS-NOPEC GEOPHYSICAL COMPANY, WESTERNGECO LLC, AND THE AMERICAN PETROLEUM INSTITUTE |
| CITY OF BEAUFORT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, et al., <br><br> Defendants. | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND .......................................................................................................... 2

III.    ARGUMENT ................................................................................................................ 3

        A.      Preliminary Injunctive Relief Is an Extraordinary Remedy. ................................. 3

        B.      The Cities' Motion Should Be Denied Because It Fails to Demonstrate a
                Likelihood of Irreparable Harm. ........................................................................... 4

                1.      The Cities fail to demonstrate that their tourism interests are likely
                        to be irreparably harmed. ........................................................................... 4

                2.      The Cities fail to demonstrate that South Carolina's coastal
                        fisheries are likely to be irreparably harmed............................................. 8

        C.      Plaintiffs Are Not Likely to Succeed on the Merits............................................. 11

        D.      A Preliminary Injunction Enjoining the IHAs as a Means of Precluding
                Geophysical Data Collection Is Not in the Public Interest. ................................. 11

IV.     CONCLUSION............................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Whitewater v. Tidwell,*
   770 F.3d 1108 (4th Cir. 2014) ................................................................................8

*Amoco Prod. Co. v. Vill. of Gambell,*
   480 U.S. 531 (1987).............................................................................................11

*Caribbean Marine Servs. v. Baldrige,*
   844 F.2d 668 (9th Cir. 1988) ................................................................................6

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)................................................................................................4

*Hodges v. Abraham,*
   253 F. Supp. 2d 846 (D.S.C. 2002)....................................................................6, 8

*Lands Council v. McNair,*
   537 F.3d 981 (9th Cir. 2008) ..............................................................................10

*Manning v. Hunt,*
   119 F.3d 254 (4th Cir. 1997) ................................................................................8

*Marsh v. Or. Nat. Res. Council,*
   490 U.S. 360 (1989)............................................................................................10

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) (per curiam).....................................................................1, 4

*N.M. Dep't of Game & Fish v. United States Dep't of the Interior,*
   854 F.3d 1236 (10th Cir. 2017) ............................................................................4

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs,*
   817 F. Supp. 2d 1290 (D. Or. 2011) ...................................................................10

*Outdoor Lighting Perspectives Franchising, Inc. v. Stubbs,*
   No. CV 2:11-2524-RMG, 2012 WL 12904016 (D.S.C. June 15, 2012) ..................3

*Power Mobility Coal. v. Leavitt,*
   404 F. Supp. 2d 190 (D.D.C. 2005)..................................................................1, 4

*In re Rare Coin Galleries of America, Inc.,*
   862 F.2d 896 (1st Cir. 1988)..............................................................................1, 6

*Real Truth About Obama, Inc. v. Fed. Election Comm'n,*
   575 F.3d 342 (4th Cir. 2009) ................................................................................4

*SAS Inst., Inc. v. World Programming Ltd.*,
    874 F.3d 370 (4th Cir. 2017) ................................................................4

*Winter v. NRDC*,
    555 U.S. 7 (2008)........................................................................4, 8

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ..............................................................5

**Statutes**

43 U.S.C. § 1332(3) .......................................................................11

**Regulations**

83 Fed. Reg. 63,268 (Dec. 7, 2018) ............................................2, 3, 7, 9

**Other Authorities**

BOEM, Science Notes, Aug. 22, 2014, *available at*
    https://www.boem.gov/BOEM-Science-Note-August-2014/ ..................................5

## I.    INTRODUCTION

In the last 80 years, tens of thousands of seismic surveys have been carried out in the world's oceans and along coastlines with marine-dependent communities. *See* Dkt. 215 (Declaration of Nikki Martin) ¶ 8. In all of that time, there is not a *single instance* of sound from a seismic survey causing injury to marine mammals or having *any* negative impact on a fishery or a local economy dependent on tourism. The plaintiffs in this lawsuit (the "Cities") have every right to be concerned about the industries on which they thrive. And there is no dispute that fisheries and tourism are important to the economic health and well-being of the communities represented in this lawsuit. However, the Cities have not demonstrated that the important interests they seek to protect are likely to be imminently and irreparably harmed by the federal authorizations challenged in this lawsuit.

"Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction." *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 902 (1st Cir. 1988). Rather, the Cities must present "substantial proof" that there is a "'clear and present need for extraordinary equitable relief to prevent harm.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (citation omitted). The Cities have not made that showing.

The National Marine Fisheries Service ("NMFS")—the agency entrusted by Congress to protect marine mammals and the nation's fisheries resources—carefully evaluated the effects of the proposed seismic surveys that are the subject of this litigation. NMFS concluded, based on a comprehensive record developed over almost four years, that the surveys would have no more than a "negligible impact" on marine mammal populations and no adverse effects on fish populations or fisheries. If permitted by the Bureau of Ocean Energy Management ("BOEM"),

the surveys themselves would occur only in federal waters (many miles outside of state waters) and would be subject to numerous mitigation and monitoring measures, imposed by both NMFS and BOEM, that have been employed in hundreds of other surveys to reduce the already-minimal effects of seismic surveying. 83 Fed. Reg. 63,268, 63,271 (Dec. 7, 2018). The Cities have provided no credible evidence to counter the well-considered, scientifically supported, and rational determinations of the expert federal agency.

As set forth below, the Cities have failed to meet their heavy burden to establish that they are entitled to preliminary injunctive relief. Intervenor-Defendants respectfully request that the Court deny the Cities' motion for a preliminary injunction.

## II.   BACKGROUND[1]

In 2015 and 2016, the five companies that are the recipients of the NMFS authorizations challenged here (the "Exploration Companies") responded to BOEM's Programmatic Environmental Impact Statement for geological and geophysical activities in the Mid- and South Atlantic Outer Continental Shelf ("OCS") by submitting applications for permits to conduct seismic surveys on the Atlantic OCS. Dkt. 215 (Martin Decl.) ¶¶ 10-12. The Exploration Companies also submitted applications to NMFS for authorizations ("IHAs") to incidentally "take" marine mammals during the surveys, pursuant to the Marine Mammal Protection Act ("MMPA"). Id. ¶ 15.

On November 30, 2018, after a long and detailed administrative process that included two rounds of public review and comment (one required and one voluntary), NMFS issued IHAs

---

[1] In Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction ("Cities' Br."), the Cities "incorporate the background and arguments set forth by the [SCCCL] Plaintiffs as if fully set forth" in the Cities' brief. Cities Br. at 1. Accordingly, Intervenor-Defendants also incorporate by reference their response in opposition to the SCCCL's motion for preliminary injunction at Dkt. 212.

to each of the Exploration Companies. 83 Fed. Reg. 63,268 (Dec. 7, 2018). In so doing, NMFS found that the incidental harassment authorized by the IHAs involves "small numbers" of marine mammals and will have no more than a "negligible impact" on any affected marine mammal populations. *Id*. at 63,363, 63,375-76. The IHAs do not authorize the Exploration Companies to actually conduct seismic surveys. Rather, BOEM authorizes the surveys and has not yet issued decisions on any of the pending permit applications.

Less than two weeks after NMFS issued the IHAs, the Cities and a group of environmental organizations ("SCCCL") filed two lawsuits challenging the IHAs under the Administrative Procedure Act, the Endangered Species Act, the National Environmental Policy Act, and the MMPA. *See* Dkts. 1, 68. This Court consolidated the two lawsuits and granted intervention on the side of the plaintiffs to 10 Atlantic states as well as intervention on the side of the defendants to the Exploration Companies and two trade associations representing the interests of the geophysical and petroleum industries. *See* Dkts. 57, 117, 118. On February 20, 2019, SCCCL filed a motion for a preliminary injunction seeking to "stay[] the effectiveness of NMFS's harassment authorizations." Dkt. 124-1 at 35. On February 28, 2019, the Cities filed their motion seeking the same relief, relying largely upon the arguments and evidence presented by SCCCL.

### III.    ARGUMENT

#### A.    Preliminary Injunctive Relief Is an Extraordinary Remedy.

"'A preliminary injunction is an extraordinary remedy never awarded as of right.' To obtain this extraordinary form of relief, the moving party must demonstrate by a 'clear showing' that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest." *Outdoor Lighting Perspectives Franchising, Inc.*

*v. Stubbs*, No. CV 2:11-2524-RMG, 2012 WL 12904016, at *1 (D.S.C. June 15, 2012) (quoting

*Winter v. NRDC*, 555 U.S. 7, 24 (2008); citing *Real Truth About Obama, Inc. v. Fed. Election

Comm'n*, 575 F.3d 342, 345-46 (4th Cir. 2009)).  An injunction can only issue based upon

"substantial proof" that an injunction is warranted. *Mazurek*, 520 U.S. at 972.

**B.      The Cities' Motion Should Be Denied Because It Fails to Demonstrate a Likelihood
of Irreparable Harm.**

"'The equitable remedy [of an injunction] is unavailable absent a showing of irreparable

injury.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386 (4th Cir. 2017) (brackets

in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Indeed, a clear

demonstration of irreparable harm to the plaintiff "'is the single most important prerequisite for

the issuance of a preliminary injunction.'" *N.M. Dep't of Game & Fish v. United States Dep't of

the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017) (citation omitted).  "[P]roving 'irreparable

injury' is a considerable burden, requiring proof that the movant's injury is 'certain, great and

actual—not theoretical—and imminent, creating a clear and present need for extraordinary

equitable relief to prevent harm.'" *Power Mobility*, 404 F. Supp. 2d at 204 (citation omitted).

The Cities claim that the proposed seismic surveys will irreparably harm (1) local tourism

industries that depend, for example, on whale watching; and (2) fisheries upon which local

economies depend.  As set forth below, the Cities' motion is premised on unsubstantiated fears

that have no evidentiary basis.  Accordingly, the Cities' motion should be denied because they

have not established that they are likely to be irreparably harmed as a result of NMFS's issuance

of the five IHAs.

**1.      The Cities fail to demonstrate that their tourism interests are likely to be
irreparably harmed.**

As a threshold matter, the Cities have provided no evidence showing that their feared

harm to tourism "has occurred in the past and is likely to occur again, or proof indicating that the

harm is certain to occur in the near future." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). The Cities do not cite a single instance in which a seismic survey was demonstrated to have any effect on any tourism business. And, in fact, no such effects have ever been observed, despite tens of thousands of seismic surveys worldwide and thousands of surveys in the United States. Dkt. 215 (Martin Decl.) ¶ 8; *see* Dkt. 214 (Declaration of Dr. Robert Gisiner) ¶¶ 63-66.

The available information shows the opposite. As BOEM has explained, "there has been no documented scientific evidence of noise from air guns used in geological and geophysical (G&G) seismic activities adversely affecting marine animal populations or coastal communities," despite the fact that this "technology has been used for more than 30 years around the world."[2] For example, hundreds of seismic surveys (or more) have been conducted over decades in the Gulf of Mexico alongside thriving fishing and tourism industries, without any showing that the surveys have had any negative effects on those industries. *See* Dkt. 214 (Gisiner Decl.) ¶ 63. Additionally, as particularly relevant here, more than 213,936 linear miles of seismic surveys were conducted on the Atlantic OCS in the 1970s and 1980s without any showing of any negative effects on local industries. Dkt. 215 (Martin Decl.) ¶ 9. Since 2014, at least five seismic surveys have been authorized on the Atlantic OCS, again with no demonstration of any impact. *Id.* ¶ 9; Dkt. 213 (Declaration of Ryan Steen), Ex. L at 25. The Cities have provided no evidence showing that the unprecedented harms they presently fear have occurred in the past.

Furthermore, the Cities have provided no "proof indicating that the harm is *certain* to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674 (emphasis added). The Cities cite multiple block quotes from local political leaders explaining the importance of tourism to local

---

[2] BOEM, Science Notes, Aug. 22, 2014, *available at* https://www.boem.gov/BOEM-Science-Note-August-2014/.

economies. Cities' Br. at 4, 7-8. But the Cities fail to show *how* NMFS's issuance of the IHAs will irreparably harm those important interests. As just one example, the Mayor of Edisto Beach states that residents of her town are concerned that acoustic pulses from seismic surveys will cause property damage and lower real estate values in Edisto Beach. Dkt. 143-2 (Declaration of Jane Darby) at 3-4. Setting aside the fact that property damage from marine seismic surveys is a physical impossibility, the Cities provide no evidence for how such damage could occur or how real estate values will decrease as a result of the surveys. This is precisely the type of speculative injury that is insufficient to establish a likelihood of irreparable harm. *See Hodges v. Abraham*, 253 F. Supp. 2d 846, 864 (D.S.C. 2002) ("fear of speculative . . . injury" is not sufficient to support an injunction); *Caribbean Marine Servs. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[s]peculative injury does not constitute irreparable injury").

The Cities also assert that local dolphin-watching tourism operations will be irreparably harmed by the seismic surveys. Cities' Br. at 6-7. As support, the Cities provide declarations from the proprietors of Blue Wave Adventures and Flipper Finders stating that the seismic surveys will harm their businesses by driving dolphins away from their habitat, causing their respective businesses to collapse. Cities' Br. at 7; Dkt. 143-6 (Declaration of Mark Collins); Dkt. 143-7 (Declaration of Richard Brendel). The owner of Blue Wave Adventures further opines that seismic activity "will without question have a negative impact on the dolphin population." Dkt. 143-6 (Collins Decl.) at 2. But neither of these declarants is an expert on dolphins, marine sound, or seismic surveys (and are not presented as such), and thus present nothing more than "[s]peculation or unsubstantiated fears of what may happen in the future." *In re Rare Coin Galleries of America, Inc.*, 862 F.2d at 902. As for expert support, the Cities simply rely upon the expert declarations submitted by SCCCL. Cities' Br. at 6. The problem, for the Cities, is that

not a single expert for SCCCL described *any* alleged harm to dolphins, leaving the Cities with no support for their, and their declarants', general assertions that the surveys will drive away dolphins.

Again, the best available information shows the opposite. Most dolphin species are mid-frequency cetaceans whose "[g]eneralized hearing is estimated to occur between approximately 150 Hz and 160 kHz," which is higher than the predominant frequency produced during seismic surveys. 83 Fed. Reg. at 63,324; *see* Dkt. 214 (Gisiner Decl.) ¶¶ 27-30, 55. Far from harming or displacing dolphins, there is well-documented evidence of dolphins actually approaching and bow-riding off of survey vessels during active surveys. *Id.* at 63,303. NMFS further explains:

> [D]olphins have a relatively high threshold for the onset of auditory injury and, for small delphinids, more severe adverse behavioral responses are less likely given the evidence of purposeful approach and/or maintenance of proximity to vessels with operating airguns. With regard to the former point, Finneran et al. (2015) exposed bottlenose dolphins to repeated pulses from an airgun and measured no [temporary threshold shift].

83 Fed. Reg. at 63,311. Despite the lack of evidence showing that dolphins are harmed by seismic surveys, NMFS still, as an additional precaution, required "a year-round closure to all survey activity out to 30 km offshore, including a 20-km distance beyond which encountered dolphins would generally be expected to be of the offshore stock and a 10-km buffer distance that is expected to encompass all received sound levels exceeding the 160-dB rms Level B harassment criterion." *Id.* at 63,275. NMFS concluded that impacts, if any occurred at all, would be "minimal." *Id.* The Cities have provided *no evidence* in response to this well-reasoned and well-supported agency decision.[3]

---

[3] Even if the Cities had demonstrated that seismic activity would temporarily displace dolphins (which they have not shown and cannot show), they have made no effort to establish, with clear evidence, that such displacement would be likely to cause irreparable harm to local businesses.

In short, the Cities have only shown a "fear of speculative . . . injury" to local tourism interests. *Hodges*, 253 F. Supp. 2d at 864 (citing *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997)).  The Cities have presented no evidence sufficient to establish the "clear showing" that they are entitled to the extraordinary relief of a preliminary injunction because of alleged harm to those interests. *Winter*, 555 U.S. at 22.

> **2.      The Cities fail to demonstrate that South Carolina's coastal fisheries are likely to be irreparably harmed.**

The Cities next assert that the proposed seismic surveys will irreparably harm South Carolina's coastal fisheries. Cities' Br. at 7.  But this alleged harm is similarly speculative, is non-specific, is unsupported by credible expert evidence, and has been rejected by the agency responsible for the stewardship, health, and sustainability of the nation's fisheries. Additionally, a court's "review is particularly deferential when . . . 'resolution of th[e] dispute involves primarily issues of fact' that implicate 'substantial agency expertise,' and the agency is tasked with balancing often-competing interests," as is the case here. *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir. 2014) (brackets in original; citation omitted).

The Cities claim, without explanation, that the challenged seismic surveys will reduce the local seafood harvest by up to 70 percent. Cities' Br. at 7.  The Cities provide no specifics on which fisheries will be harmed or details as to the proximity of those fisheries to the proposed survey activities. Again, the Cities provide no expert declarations to support these claims, and instead rely on speculation from local politicians and business owners, and the declaration of Dr. Aaron Rice submitted by SCCCL. *Id*. at 6-9.  As to the non-expert declarations, there is no dispute that they highlight the importance of coastal fisheries and rightly express a strong interest in preserving those fisheries. However, they do not go further to present credible evidence

showing how, when, and why those fisheries will be harmed.  Their allegations of harm are, therefore, "speculative" by definition.

For his part, Dr. Rice opines that "[a]irguns have been shown to alter fish and invertebrate behavior and habitat use in ways that are biologically significant." Dkt. 124-5 (Declaration of Dr. Aaron Rice) ¶ 26.  However, Dr. Rice's opinion directly contradicts the reasoning and conclusions reached by the expert agency charged with managing the nation's fisheries. Specifically, NMFS considered and rejected the notion that seismic surveys will harm fish populations.  In issuing the IHAs, NMFS acknowledged that "[s]everal studies have demonstrated that airgun sounds might affect the distribution and behavior of some fishes," but explained that these studies are not representative of the best available science:

> [O]ur review shows that the bulk of studies indicate no or slight reaction to noise (e.g., Miller and Cripps, 2013; Dalen and Knutsen, 1987; Pena et al., 2013; Chapman and Hawkins, 1969; Wardle et al., 2001; Sara et al., 2007; Jorgenson and Gyselman, 2009; Blaxter et al., 1981; Cott et al., 2012; Boeger et al., 2006), and that, most commonly, while there are likely to be impacts to fish as a result of noise from nearby airguns, such effects will be temporary.

83 Fed. Reg. at 63,326.  Similarly, NMFS "determined that the issuance of these IHAs will not result in adverse impacts to [Essential Fish Habitat]," *id.* at 63,274, and that "[f]or these surveys, the sound source is constantly moving, and most fish would likely avoid the sound source prior to receiving sound of sufficient intensity to cause physiological or anatomical damage," *id.* at 63,279.

Additionally, Dr. Gisiner provides a thorough explanation for why "Dr. Rice's claims are based upon an incorrect understanding and representation of the scientific evidence," and specifically debunks the flawed methodology of the studies upon which Dr. Rice bases his opinion. Dkt. 214 (Gisiner Decl.) ¶¶ 92, 93-104.  For example, Dr. Gisiner explains the

weaknesses with Dr. Rice's reliance on studies like McCauley et al. (2003), which featured multiple, close range passes of an acoustic source over fish constrained in cages—an unrealistic scenario that would never occur under normal survey conditions. *Id.* ¶ 94.  Dr. Gisiner concludes that "the arguments provided in support of the contention that normal seismic survey operations might affect the hearing, survival, health, or behavior of fish and invertebrates are undermined by Dr. Rice's poor grasp of basic physics of sound and fish and invertebrate hearing and biology, selective use of reference material, and over-generalizations that have no scientific support." *Id.* ¶ 104.  Even Dr. Rice tries to buffer his bold, generalized assertions with the caveat that "[a]ssessing the immediate behavioral responses of fish to airgun firing is difficult." Dkt. 124-5 (Rice Decl.) ¶ 33.

In any event, the Cities' secondhand reliance on Dr. Rice's opinion is unavailing because "[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if . . . a court might find contrary views more persuasive." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989); *see Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp. 2d 1290, 1315 (D. Or. 2011) ("Despite NEDC's conflicting views regarding the potential for irreparable harm from in-stream gravel mining activities generally, the court must defer to 'the reasonable opinions of [the agency's] own qualified experts even if, as an original matter, a court might find contrary views more persuasive.'") (quoting *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (brackets in original)). The Cities offer no credible evidence to support their claim that the proposed seismic surveys are likely to irreparably harm coastal fisheries.

In sum, the Cities have failed to establish that NMFS's authorizations are likely to irreparably harm coastal fisheries and tourism interests. The Cities' arguments contradict

established science, NMFS's expert assessments, and decades of history in which thousands of seismic surveys have occurred with no showing of any harm to fisheries or tourism.

**C.      Plaintiffs Are Not Likely to Succeed on the Merits.**

The Cities incorporate the arguments made by SCCCL and make no additional arguments regarding their likelihood of success on the merits. Cities' Br. at 3.  Accordingly, Intervenor-Defendants adopt and incorporate the arguments from their response in opposition to SCCCL's arguments regarding likelihood of success on the merits. Dkt. 212.  As set forth there, the Cities are unlikely to succeed on the merits and their motion should be denied for that reason as well.

**D.      A Preliminary Injunction Enjoining the IHAs as a Means of Precluding Geophysical Data Collection Is Not in the Public Interest.**

The Cities assert that a preliminary injunction is in the public interest because the Cities are seeking to protect the marine environment while the Intervenor-Defendants are only motivated by profit. Cities' Br. at 9-13.  However, the Cities overlook established U.S. policy embodied in the Outer Continental Shelf Lands Act ("OCSLA"), in which Congress directs BOEM to ensure the "expeditious and orderly development" of the OCS. 43 U.S.C. § 1332(3).  Applying the traditional balancing of equities test, the U.S. Supreme Court has held that the balance of hardships does not favor an injunction where environmental injury is not a probable result of oil and gas leasing and exploration, and yet delay will both contravene the purposes of OCSLA and cause the loss of millions of dollars. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).  An order enjoining the effectiveness of the IHAs, and thereby foreclosing the proposed surveys, would thwart the policies expressed in the OCSLA by preventing the acquisition of data necessary to inform the decisions regarding the orderly development of the OCS, and cause unnecessary economic hardship and delay to the Intervenor-Defendants. Dkt. 215 (Martin Decl.) ¶ 19; Dkt. 216 (Declaration of Richmond Miller); Dkt. 217 (Declaration of

Gary Stuart Poole); Dkt. 218 (Declaration of Michael Whitehead); Dkt. 219 (Declaration of Peter

Seidel); Dkt. 220 (Declaration of Joseph Gagliardi).

## IV.    CONCLUSION

For the foregoing reasons, the Cities have not demonstrated that they are entitled to the

extraordinary relief of a preliminary injunction. Accordingly, Intervenor-Defendants respectfully

request that the Court deny the Cities' motion for a preliminary injunction.


DATED:  March 14, 2019                    Respectfully submitted,


                                          s/ Sean D. Houseal
                                          Richard Morton, Fed. Id. No. 5442
                                          Sean Houseal, Fed. Id. No. 7676
                                          WOMBLE BOND DICKINSON (US) LLP
                                          301 S. College Street, Suite 3500
                                          Charlotte, NC 28202-6037
                                          5 Exchange Street
                                          Charleston, SC  29401
                                          Telephone:  704-331-4993
                                                      843-720-4622
                                          Facsimile:  843-723-7398
                                          Email:  Ric.Morton@wbd-us.com
                                          Email: Sean.Houseal@wbd-us.com


                                          Ryan P. Steen, Admitted *Pro Hac Vice*
                                          Jason T. Morgan, Admitted *Pro Hac Vice*
                                          STOEL RIVES LLP
                                          600 University Street, Suite 3600
                                          Seattle, WA  98101
                                          Telephone: 206-624-0900
                                          Facsimile: 206-386-7500
                                          Email: ryan.steen@stoel.com
                                                 jason.morgan@stoel.com


                                          *Counsel for Intervenor-Defendants*