UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILBUR ROSS, in his official capacity as the Secretary of Commerce, et al., <br><br> Defendants. | Civil Action No. 2:18-cv-03326-RMG <br> (Consolidated with 2:18-cv-3327-RMG) <br><br> RESPONSE BRIEF IN OPPOSITION TO STATE OF MARYLAND ET AL.'S MOTION FOR PRELIMINARY INJUNCTION BY INTERVENOR-DEFENDANTS THE INTERNATIONAL ASSOCIATION OF GEOPHYSICAL CONTRACTORS, CGG SERVICES (U.S.) INC., GX TECHNOLOGY CORPORATION, SPECTRUM GEO INC., TGS-NOPEC GEOPHYSICAL COMPANY, WESTERNGECO LLC, AND THE AMERICAN PETROLEUM INSTITUTE |
| CITY OF BEAUFORT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, et al., <br><br> Defendants. | |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1

II. LEGAL STANDARD ................................................................................................. 2

III. ARGUMENT ............................................................................................................... 2

    A. The States Fail to Demonstrate How the IHAs or Proposed Surveys Will Impact the States' Tourism Interests ............................................................... 2

    B. The States' Opposition to Offshore Oil and Gas Development Is No Basis for the Relief They Seek ................................................................................. 4

        1. The States' arguments are based on a misunderstanding of OCSLA ........ 4

        2. The States' arguments are undermined by their own actions .................... 6

IV. CONCLUSION ............................................................................................................ 8

# TABLE OF AUTHORITIES

Page

**Cases**

*Ctr. for Food Safety v. Vilsack*,
    636 F.3d 1166 (9th Cir. 2011) ..................................................................................................1

*De La Fuente v. S.C. Democratic Party*,
    164 F. Supp. 3d 794 (D.S.C. 2016)............................................................................................1

*Fisheries Survival Fund v. Jewell*,
    236 F. Supp. 3d 332 (D.D.C. 2017) ...........................................................................................3

*Hodges v. Abraham*,
    253 F. Supp. 2d 846 (D.S.C. 2002)............................................................................................3

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)...................................................................................................................2

*Outdoor Lighting Perspectives Franchising, Inc. v. Stubbs*,
    No. CV 2:11-2524-RMG, 2012 WL 12904016 (D.S.C. June 15, 2012) ...................................2

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
    575 F.3d 342 (4th Cir. 2009) .....................................................................................................1

*Sec'y of the Interior v. California*,
    464 U.S. 312 (1984)...................................................................................................................4

*Winter v. Natural Resources Defense Council*,
    555 U.S. 7 (2008).................................................................................................................1, 2

**Statutes**

16 U.S.C. § 1451, *et seq.*......................................................................................................................6

16 U.S.C. § 1456.................................................................................................................................6

16 U.S.C. § 1456(c)(3)(A) ...............................................................................................................6, 7

43 U.S.C. § 1331, *et seq.*............................................................................................................ passim

43 U.S.C. § 1332(3) ............................................................................................................................4

43 U.S.C. § 1340(a)(1)........................................................................................................................5

43 U.S.C. § 1344(a) ............................................................................................................................4

43 U.S.C. § 1344(a)(2)(E)..................................................................................................5

43 U.S.C. § 1344(a)(2)(F)..................................................................................................5

43 U.S.C. § 1802................................................................................................................4

**Regulations**

30 C.F.R. § 551.2(a)..........................................................................................................5

83 Fed. Reg. 63,268 (Dec. 7, 2018) ...................................................................................3

**Other Authorities**

BOEM, Science Notes, Aug. 22, 2014, *available at*
    https://www.boem.gov/BOEM-Science-Note-August-2014/ ....................................................3

# I. INTRODUCTION

A group of nine Atlantic states (Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, North Carolina, and Virginia, collectively the "States") have joined the coalition of environmental advocacy groups ("SCCCL") in seeking to enjoin five incidental harassment authorizations ("IHAs") issued by the National Marine Fisheries Service to Intervenor-Defendants CGG Services (U.S.) Inc., GX Technology Corporation, Spectrum Geo Inc., TGS-NOPEC Geophysical Company, and WesternGeco LLC.[1] The States "adopt" the arguments made by SCCCL in support of a preliminary injunction,[2] but write separately to address the "public interest" prong under *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008). Dkt. 148-1 at 2. The State's additional public interest arguments provide no support for the requested injunction.

Initially, the States' public interest arguments are largely irrelevant because SCCCL has failed to demonstrate the required irreparable injury and likelihood of success prongs under *Winter*. *See* Dkts. 212 and 221 (Intervenor-Defendants' and Federal Defendants' response briefs in opposition). Irreparable injury and likelihood of success are prerequisites to any injunctive relief, and when one of these required factors is absent, the court "need not address . . . the remaining elements of the preliminary injunction standard." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011); *see also De La Fuente v. S.C. Democratic Party*, 164 F. Supp. 3d 794, 798 (D.S.C. 2016) ("The Fourth Circuit no longer recognizes a 'flexible interplay'

---

[1] The State of South Carolina has also intervened on the side of the plaintiffs but has filed a separate motion for preliminary injunction. *See* Dkt. 146.

[2] Intervenor-Defendants therefore adopt their opposition to these arguments as set forth at Dkt. 212.

among these criteria. Instead, each requirement must be fulfilled as articulated.") (quoting *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009)).

However, even if the Court does consider the States' arguments, those arguments are unavailing. At bottom, the States argue that the public interest favors an injunction because (a) the surveys would "harass vast numbers of marine mammals and other wildlife," which could impact tourism and recreation; and (b) the States have "vigorous opposition" to offshore oil and gas development. As set forth below, the States' first argument is without any factual basis, and the States' second argument is contrary to the purpose and structure of the Outer Continental Shelf Lands Act ("OCSLA"). The States' motion should therefore be denied.

## II. LEGAL STANDARD

"'A preliminary injunction is an extraordinary remedy never awarded as of right. To obtain this extraordinary form of relief, the moving party must demonstrate by a "clear showing" that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest.'" *Outdoor Lighting Perspectives Franchising, Inc. v. Stubbs*, No. CV 2:11-2524-RMG, 2012 WL 12904016, at *1 (D.S.C. June 15, 2012) (citations omitted); *Winter*, 555 U.S. at 24.

## III. ARGUMENT

A.  **The States Fail to Demonstrate How the IHAs or Proposed Surveys Will Impact the States' Tourism Interests.**

The States briefly echo some of the arguments made by the Cities—*i.e.*, that a preliminary injunction is in the public interest because "[t]he States' economies . . . depend heavily on coastal tourism and recreation," and "[o]cean-dependent tourism makes a substantial contribution to states' economies." States' Br. at 2-3. But, as Intervenor-Defendants explained in

OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION – 2
100777188.4 0081381-00014

response to the Cities' preliminary injunction motion, genuine concern about impacts to tourism is not enough. The States must provide "substantial proof" that there is a "clear and present need for extraordinary equitable relief to prevent harm." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017) (internal quotation marks and citations omitted). The States provide no evidence that the surveys will harm tourism, and there is none.[3] Without putting forward *any evidence* to support that claim, the States cannot show that their requested injunction is in the public interest.

Not only have the States failed to provide evidence, but their claims of harm to tourism are not credible. In the last 80 years, tens of thousands of seismic surveys have been carried out in the world's oceans and along coastlines with marine-dependent communities. In all of that time, there has not been a *single instance* of a survey having any impact on a recreational fishery or a local economy dependent on tourism.[4] Indeed, more than 213,936 linear miles of seismic surveys were conducted on the Atlantic OCS in the 1970s and 1980s without any showing of any negative effects on local industries. Dkt. 215 (Martin Decl.) ¶ 9. Since 2014, at least five seismic surveys have been authorized on the Atlantic OCS, again with no demonstration of any harmful impact. *Id.*; Dkt. 213 (Declaration of Ryan Steen), Ex. L at 25. The States have presented no countervailing evidence and, instead, only speculate that their important interests in tourism are

---

[3] The States "respectfully join [SCCCL's] Motion for Preliminary Injunction (ECF 124) and adopt [SCCCL's] arguments in support of that Motion," Dkt. 148-1, yet none of SCCCL's arguments address irreparable harm to state tourism interests.

[4] *See* BOEM, Science Notes, Aug. 22, 2014, *available at* https://www.boem.gov/BOEM-Science-Note-August-2014/ ("there has been no documented scientific evidence of noise from air guns used in geological and geophysical (G&G) seismic activities adversely affecting marine animal populations or coastal communities" despite the fact that this "technology has been used for more than 30 years around the world"); 83 Fed. Reg. 63,268, 63,327-28 (Dec. 7, 2018) (NMFS findings regarding lack of seismic survey effects on fisheries); Dkt. 215 (Declaration of Nikki Martin) ¶ 8; *see* Dkt. 214 (Declaration of Dr. Robert Gisiner) ¶¶ 63-66.

OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION – 3
100777188.4 0081381-00014

threatened by the proposed surveys. But "[a] fear of speculative or remote future injury cannot constitute irreparable harm." *See Hodges v. Abraham*, 253 F. Supp. 2d 846, 864 (D.S.C. 2002). The States have demonstrated no basis for a preliminary injunction based on their tourism interests.

**B.     The States' Opposition to Offshore Oil and Gas Development Is No Basis for the Relief They Seek.**

The States further argue that their "vigorous opposition" to offshore oil and gas development demonstrates that the public interest warrants an injunction. States' Br. at 5. They argue that the proposed surveys are premature and not in the public interest because BOEM has not issued a final five-year leasing plan that includes the Atlantic OCS. *Id.* at 6. The States also identify their "policies relating specifically to offshore drilling in their coastal zones." *Id.* at 5. As explained below, the States misunderstand the OCSLA process and, in any event, have already found the proposed surveys to be *consistent with* state coastal zone policies.

**1.     The States' arguments are based on a misunderstanding of OCSLA.**

OCSLA was enacted by Congress to promote and ensure the "expedited exploration and development of the [OCS]." 43 U.S.C. § 1802; *see also* 43 U.S.C. § 1332(3) (the OCS "should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs"). The formulation of a five-year leasing program is the first step in the process, in which BOEM prepares "a schedule of proposed lease sales indicating, as precisely as possible, the size, timing, and location of leasing activity which [the Secretary] determines will best meet national energy needs for the five-year period following its approval or reapproval." 43 U.S.C. § 1344(a); *Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984).

A separate provision of OCSLA, which is unrelated to the OCS leasing process, authorizes geophysical and geological surveys. Specifically, that section provides:

> Any agency of the United States and any person authorized by the Secretary may conduct geological and geophysical explorations in the outer Continental Shelf, which do not interfere with or endanger actual operations under any lease maintained or granted pursuant to this subchapter, and which are not unduly harmful to aquatic life in such area.

43 U.S.C. § 1340(a)(1). Contrary to the States' implications, seismic surveys may occur anywhere on the OCS regardless of whether the area in question is included in a five-year leasing plan. *See id.*; *see also* 30 C.F.R. § 551.2(a) (providing that seismic surveys are allowed "on unleased lands or on lands under lease to a third party"). Indeed, a key reason pre-leasing surveys are conducted is to gather geophysical data essential to BOEM's determination whether to offer certain areas for leasing and industry decisions about whether and how much to bid on offered leases. *See* 43 U.S.C. § 1344(a)(2)(E). The States' suggestion that seismic surveys should only occur in areas already included in a five-year plan contradicts both black letter law and common sense.

Additionally, the States cite to 43 U.S.C. § 1344(a)(2)(F), arguing that "[a]lthough this litigation does not challenge the validity of any lease or leasing plan, Congress's solicitude for states' policy views in OCSLA confirms that it is appropriate for this Court to exhibit similar solicitude for the States' views here." States' Br. at 6; 43 U.S.C. § 1344(a)(2)(F) (Secretary must consider "laws, goals, and policies of affected States which have been specifically identified by the Governors of such states . . . ."). The States' arguments are, again, misplaced. First, this provision applies to the process for developing a five-year plan and, as explained above, the proposed seismic surveys are authorized through a separate process. Second, even if it were relevant here, the OCSLA provision cited by the States gives equal emphasis to "the interest of

potential oil and gas producers in the development of oil and gas resources as indicated by exploration or nomination." 43 U.S.C. § 1344(a)(2)(E). However, BOEM cannot fairly gauge these interests if oil and gas producers do not have accurate information about the potential resources of the OCS in the first place.

In sum, Congress articulated in OCSLA a public interest in the safe, orderly, and expeditious development of the OCS. The States no doubt have an important interest in that congressionally mandated process. However, the States' attempt to use this lawsuit as a proxy for their opposition to future, potential offshore leasing on the Atlantic OCS is misplaced.

2.     **The States' arguments are undermined by their own actions.**

The States also argue that offshore oil and gas development, and indeed the proposed seismic surveys as well, are not consistent with the States' coastal zone management policies. States' Br. at 4-5. However, the States fail to mention that the five plaintiff states with coastal waters adjacent to certain proposed surveys either (a) expressly found that the proposed surveys are consistent with their own coastal zone management plans or (b) were so unconcerned about the proposed surveys that they did not even participate in the applicable process under the Coastal Zone Management Act ("CZMA").[5] *See* Second Declaration of Ryan Steen.

The CZMA, 16 U.S.C. § 1451, *et seq.*, authorizes states to review federal actions that may have reasonably foreseeable effects on the uses or resources of the coastal zone of a state for consistency with the enforceable policies of a state's approved coastal management program

---

[5] Virginia did not request to participate in the CZMA process. The coastal zones of Connecticut, Maine, Massachusetts, New Jersey, and New York do not have coastal zones abutting the proposed survey areas. Nonetheless, New York requested to participate but was denied by NOAA's Office for Coastal Management ("OCM") because New York failed to identify "specific uses of an Area of Interest or ma[k]e a connection to coastal effects from the proposed seismic surveys" and, therefore, OCM determined that "there are no reasonably foreseeable effects to New York's coastal uses or resources." Second Steen Decl., Ex. K at 7.

("CMP"). *Id.* § 1456.  Under this "federal consistency" provision, an applicant for a federal permit affecting any land or water use or natural resource of a state's coastal zone must submit a consistency certification to the appropriate state agency certifying that the activity complies with the enforceable policies of the state's CMP. *Id.* § 1456(c)(3)(A).  An applicant's submission of a consistency certification starts a review period during which a reviewing state can concur or object to the applicant's consistency certification. *Id.*

Despite their present claims, Delaware, Maryland, North Carolina, and South Carolina issued *concurrences* in which they found that some or all of the proposed surveys are consistent with their respective CMPs.[6] *See, e.g.*, Second Steen Decl., Ex. J at 1 ("After reviewing Spectrum Geo's Consistency Determination and associated documents, SCDHEC concurs that the proposed seismic survey activity complies with the enforceable policies contained within the S.C. Coastal Zone Management Program pursuant to 15 C.F.R. 930.55."); Ex. D at 2 ("[North Carolina's Division of Coastal Management] reviewed the information [GXT] provided and finds that the proposed project is consistent with the relevant enforceable policies of North Carolina's approved coastal management program when performed in accordance with the conditions outlined below."); Ex. B at 1 ("Based on a review of TGS' certification and accompanying materials, [Maryland] concurs that the proposed project is consistent with the Maryland Coastal Zone Management Program. . . ."); Ex. G at 1 ("[T]he [Delaware Coastal Management Program] conditionally concurs with your consistency determination for the

---

[6] Concurrences were not provided by all of these states for all proposed surveys because OCM denied consistency review to some states for some surveys because either (a) a survey's given location created no possibility of reasonably foreseeable effects for a certain state, or (b) the state made an untimely request to participate in the process. Additionally, North Carolina belatedly, and unsuccessfully, attempted to revisit its original concurrence after it had a political change in executive administrations.

OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION – 7
100777188.4 0081381-00014

proposed two-dimensional (2D) geophysical seismic survey in the Mid- and South Atlantic.").[7] In light of these express and formally considered decisions, the States cannot credibly now argue that the same surveys they already found to be consistent with their own coastal zone policies pose such imminent irreparable harm to their coastal interests that they must be preliminarily enjoined.

## IV.  CONCLUSION

The present lawsuits seek to prevent the acquisition of geophysical data that can provide critical information to decision makers, the public, and industry about the presence, or lack thereof, of oil and gas resources in the Atlantic OCS.  The States challenge these surveys as a proxy to advance their opposition to offshore oil and gas development.  But, as set forth above, the States misunderstand the OCSLA process and offer no credible basis for how the proposed surveys will actually harm their interests.  Like SCCCL, the States fail to demonstrate that they are entitled to the extraordinary relief of a preliminary injunction, and their request should be denied.

---

[7] The concurrences contain various conditions, such as requiring the survey company to notify or coordinate with state agencies responsible for fisheries or natural resources prior to beginning a seismic survey.

OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION – 8
100777188.4 0081381-00014

DATED:  March 19, 2019.                    Respectfully submitted,

                                                                s/ Sean D. Houseal
Richard Morton, Fed. Id. No. 5442
Sean Houseal, Fed. Id. No. 7676
WOMBLE BOND DICKINSON (US) LLP
301 S. College Street, Suite 3500
Charlotte, NC 28202-6037
5 Exchange Street
Charleston, SC  29401
Telephone:  704-331-4993
                     843-720-4622
Facsimile:   843-723-7398
Email:  Ric.Morton@wbd-us.com
Email: Sean.Houseal@wbd-us.com


Ryan P. Steen, Admitted *Pro Hac Vice*
Jason T. Morgan, Admitted *Pro Hac Vice*
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone: 206-624-0900
Facsimile: 206-386-7500
Email: ryan.steen@stoel.com
           jason.morgan@stoel.com

*Counsel for Intervenor-Defendants*