UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WILBUR ROSS, in his official capacity as the Secretary of Commerce, et al.,<br><br>    Defendants. | Civil Action No. 2:18-cv-03326-RMG (Consolidated with 2:18-cv-3327-RMG)<br><br><br>RESPONSE IN OPPOSITION TO STATE OF SOUTH CAROLINA'S MOTION FOR PRELIMINARY INJUNCTION BY INTERVENOR-DEFENDANTS THE INTERNATIONAL ASSOCIATION OF GEOPHYSICAL CONTRACTORS, CGG SERVICES (U.S.) INC., GX TECHNOLOGY CORPORATION, SPECTRUM GEO INC., TGS-NOPEC GEOPHYSICAL COMPANY, WESTERNGECO LLC, AND THE AMERICAN PETROLEUM INSTITUTE |
| CITY OF BEAUFORT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE, et al.,<br><br>    Defendants. | |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 3

        A.      OCSLA ............................................................................................................ 3

        B.      Authorization of Seismic Surveys ........................................................................ 4

        C.      Incidental Harassment Authorizations Under the MMPA ...................................... 5

        D.      President Obama's Withdrawal Under Section 12(a) ............................................ 5

        E.      Executive Order No. 13,795 .............................................................................. 6

        F.      Secretarial Order 3350 ...................................................................................... 7

III.    ARGUMENT .............................................................................................................. 7

        A.      South Carolina's Challenge to the Legality of Executive and Secretarial
                Orders Provides No Basis for a Preliminary Injunction ...................................... 7

        B.      South Carolina Is Unlikely to Prevail on Its Public Nuisance Claim .................. 10

IV.     CONCLUSION .......................................................................................................... 12

TABLE OF AUTHORITIES

Page

**Cases**

*Brading v. County of Georgetown*,
    327 S.C. 107, 490 S.E.2d 4 (1997) ................................................................10, 12

*Brooks v. Nacrelli*,
    473 F.2d 955 (3d Cir. 1973).......................................................................................7

*California v. Watt*,
    668 F.2d 1290 (D.C. Cir. 1981) ................................................................................3

*North Carolina ex rel. Cooper v. Tenn. Valley Auth.*,
    615 F.3d 291 (4th Cir. 2010) ...................................................................................11

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
    563 F.3d 466 (D.C. Cir. 2009) ..................................................................................4

*Dalton v. Specter*,
    511 U.S. 462 (1994)...................................................................................................8

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ....................................................................................1

*Home Sales, Inc. v. City of N. Myrtle Beach*,
    299 S.C. 70, 382 S.E.2d 463 (Ct. App. 1989).........................................................10

*Law v. City of Spartanburg*,
    148 S.C. 229, 146 S.E. 12 (1928) ...........................................................................10

*League of Conservation Voters v. Trump*,
    No. 3:17-cv-00101 (D. Alaska) .................................................................................9

*Michigan v. U.S. Army Corps of Eng'rs*,
    758 F.3d 892 (7th Cir. 2014) ........................................................................2, 10, 12

*Mountain States Legal Found. v. Bush*,
    306 F.3d 1132 (D.C. Cir. 2002).................................................................................8

*New England Legal Found. v. Costle*,
    666 F.2d 30 (2d Cir. 1981).................................................................................10, 11

*Sarsour v. Trump*,
    245 F. Supp. 3d 719 (E.D. Va. 2017) .......................................................................8

TABLE OF AUTHORITIES
(Continued)

Page

*Sec'y of the Interior v. California*,
 464 U.S. 312 (1984)................................................................................................4

*UHLIG, LLC v. Shirley*,
 No. 6:08-1208-HFF-WMC, 2009 WL 2997087 (D.S.C. Sept. 17, 2009) ................................8

**Statutes**

16 U.S.C. § 1361 *et seq.*........................................................................................6

16 U.S.C. § 1362(13) ..............................................................................................5

16 U.S.C. § 1371(a) ................................................................................................5

16 U.S.C. § 1371(a)(5)(D) ...............................................................................5, 9, 10

16 U.S.C. § 1371(a)(5)(D)(iii) ................................................................................5

16 U.S.C. § 1451 *et seq*........................................................................................11

16 U.S.C. § 1456 ....................................................................................................11

16 U.S.C. § 1456(c)(3)(A) ......................................................................................11

43 U.S.C. § 1331(b) ................................................................................................4

43 U.S.C. § 1331 *et seq*...................................................................................3, 6, 7

43 U.S.C. § 1332(3) ................................................................................................3

43 U.S.C. § 1340(a)(1).................................................................................2, 4, 9, 11

43 U.S.C. § 1341(a) ......................................................................................... passim

43 U.S.C. § 1344(a) ................................................................................................4

43 U.S.C. § 1344(a)(1)-(2)......................................................................................4

43 U.S.C. § 1802(1) ................................................................................................3

**Regulations**

30 C.F.R. § 551.2 ....................................................................................................9

30 C.F.R. § 551.2(a)................................................................................................5

TABLE OF AUTHORITIES
(Continued)

Page

30 C.F.R. § 551.4 ...................................................................................................................5

Exec. Order No. 13,795, 82 Fed. Reg. 20,815 (Apr. 28, 2017) ............................................ passim

U.S. Dep't of the Interior, Sec. Order No. 3350 (May 1, 2017) ...............................................7, 8, 9

**Other Authorities**

Restatement (Second) of Torts § 821B .....................................................................................2, 12

## I.  INTRODUCTION

South Carolina is one of many parties seeking to enjoin five incidental harassment authorizations ("IHAs") issued by the National Marine Fisheries Service ("NMFS") to Intervenor-Defendants CGG Services (U.S.) Inc., GX Technology Corporation, Spectrum Geo Inc., TGS-NOPEC Geophysical Company, and WesternGeco LLC (collectively, the "Exploration Companies"). In addition to these IHAs, the Exploration Companies have applied for (but as of this filing have not received) permits to conduct seismic surveys from the Bureau of Ocean Energy and Management ("BOEM"), pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). South Carolina states that it is adopting the arguments made by the other plaintiffs seeking injunctive relief in this case, but is filing a separate motion to add two arguments regarding the "likelihood of success" on the merits prong of the preliminary injunction analysis.[1] Both of South Carolina's arguments are without merit.

*First*, South Carolina argues at length that Executive Order No. 13,795 and Secretary of Interior Order No. 3350 ("Secretarial Order 3350") are unconstitutional or invalid, and that the Atlantic Outer Continental Shelf ("OCS") should be viewed as "withdrawn" from *leasing* by President Obama pursuant to Section 12(a) of OCSLA. But this argument is legally irrelevant to the issue of whether a preliminary injunction is appropriate in this case. NMFS's authority to issue the five IHAs derives from legislative authority as set forth in the Marine Mammal Protection Act ("MMPA")—*not* from any executive mandate and *not* from OCSLA. The validity of the Executive and Secretarial Orders targeted by South Carolina has no bearing on the validity of the IHAs and thus presents no basis to enjoin the IHAs. *See Garcia v. Google, Inc.*, 786 F.3d

---

[1] Intervenor-Defendants therefore incorporate their arguments and supporting declarations in response to the other motions for preliminary injunction and, in this brief, address only the two additional "likelihood of success" arguments presented by South Carolina.

733, 744 (9th Cir. 2015) (injunction cannot issue when there is a "mismatch" between the "substantive" claim and "the dangers [plaintiff] hopes to remedy through an injunction").

Moreover, to the extent that South Carolina seeks to enjoin yet-to-be-issued permits from BOEM, the validity of the Executive and Secretarial Orders is still irrelevant. Withdrawals under Section 12(a) of OCSLA apply to *leasing*, not seismic surveys. As President Obama's Executive Order states:

> Under the authority granted to me in section 12(a) of the Outer Continental Shelf Lands Act, 43 U.S.C. 1341(a), *I hereby withdraw from disposition by leasing* for a time period without specific expiration the areas of the Outer Continental Shelf (OCS) associated with 26 major canyons and canyon complexes offshore the Atlantic coast lying within areas currently designated by the Bureau of Ocean Energy Management as the North Atlantic and Mid-Atlantic Planning Areas.

Dkt. 213 (Declaration of Ryan Steen), Ex. P (emphasis added). There was no withdrawal from *surveying*, which occurs independent of *leasing* under 43 U.S.C. § 1340(a)(1). Accordingly, South Carolina's challenge to the Presidential and Secretarial Orders presents no basis to enjoin the yet-to-be-issued BOEM permits either.

**Second**, South Carolina argues that the planned seismic surveys create a public nuisance. A public nuisance is a "substantial and unreasonable interference with a right common to the general public." *Michigan v. U.S. Army Corps of Eng'rs*, 758 F.3d 892, 904 (7th Cir. 2014) (citing Restatement (Second) of Torts § 821B). South Carolina has no public nuisance cause of action for the issuance of an IHA (or a BOEM permit) because when "Congress passes a statute, it weighs the competing public interests that would be served," and "[a]ctivities commanded or authorized by that statute reflect the public interest and so cannot be unreasonable intrusions on a public right." *Michigan*, 758 F.3d at 901. Thus, South Carolina's public nuisance claim fails as a matter of law. And, even if this claim was cognizable, South Carolina would fail in proving its

claim in light of the fact that thousands of seismic surveys have occurred on the OCS for many decades and there is no evidence in all of that time that any survey created a "substantial and unreasonable interference" with any public rights.

In sum, South Carolina presents no credible additional grounds showing that it is likely to succeed on the merits. Intervenor-Defendants respectfully request the Court to deny South Carolina's motion for preliminary injunctive relief.

## II.  BACKGROUND

### A.  OCSLA.

OCSLA mandates and governs the development of offshore oil and gas resources on the United States' OCS. *See* 43 U.S.C. § 1331 *et seq*. Congress enacted OCSLA to promote and ensure the "expedited exploration and development of the [OCS] in order to achieve national economic and energy policy goals, assure national security, reduce dependence on foreign sources, and maintain a favorable balance of payments in world trade." *Id*. § 1802(1); *see also id*. § 1332(3) (the OCS "should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs"). As the D.C. Circuit observed soon after OCSLA's enactment, "the Act has an objective—the expeditious development of OCS resources." *California v. Watt*, 668 F.2d 1290, 1316 (D.C. Cir. 1981). "The first stated purpose of the Act, then, is to establish procedures to expedite exploration and development of the OCS." *Id*. Indeed, "[t]he [Act's] remaining purposes primarily concern measures to eliminate or minimize the risks attendant to that exploration and development. Several of the purposes, in fact, candidly recognize that some degree of adverse impact is inevitable." *Id*.

To facilitate OCSLA's developmental purpose and "forestall premature litigation regarding adverse environmental effects that . . . will flow, if at all, only from the latter stages of

OCS exploration and production," *Sec'y of the Interior v. California*, 464 U.S. 312, 341 (1984), Congress created "four distinct statutory stages to developing an offshore oil [or gas] well: (1) formulation of a five year leasing plan . . .; (2) lease sales; (3) exploration by the lessees; (4) development and production," *id*. at 337. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 472-73 (D.C. Cir. 2009). Congress delegated principal responsibility for this four-stage program to the Secretary of the Interior ("Secretary"), *see* 43 U.S.C. § 1331(b), much of whose authority is delegated to BOEM.

In the first step of the OCSLA process, the Department of the Interior prepares "a schedule of proposed lease sales indicating, as precisely as possible, the size, timing, and location of leasing activity which [the Secretary] determines will best meet national energy needs for the five-year period following its approval or reapproval." *Id.* § 1344(a). Not every area is scheduled for leasing in a given five-year plan, depending on expected interest and national energy needs. *Id*. § 1344(a)(1)-(2). In addition, "[t]he President of the United States may, from time to time, withdraw from disposition any of the unleased lands of the outer Continental Shelf." *Id*. § 1341(a).

**B.    Authorization of Seismic Surveys.**

OCSLA separately authorizes geophysical and geological surveys (including seismic surveys) independent of the four-stage process described above. Specifically, OCSLA provides that:

> Any agency of the United States and any person authorized by the Secretary may conduct geological and geophysical explorations in the outer Continental Shelf, which do not interfere with or endanger actual operations under any lease maintained or granted pursuant to this subchapter, and which are not unduly harmful to aquatic life in such area.

*Id*. § 1340(a)(1). BOEM issues permits under this provision, which are required for seismic

surveys and other activities such as scientific research surveys. 30 C.F.R. § 551.4. Seismic

surveys can be permitted on the OCS regardless of whether the area in question is leased or

included in a five-year leasing plan. *See id*. § 551.2(a) (confirming that seismic surveys are

allowed "on unleased lands").

**C.      Incidental Harassment Authorizations Under the MMPA.**

The MMPA generally prohibits the "take" of marine mammals, which is defined as "to

harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16

U.S.C. §§ 1362(13), 1371(a). Despite the MMPA's general prohibition on taking marine

mammals, the statute allows NMFS to permit the incidental harassment of small numbers of

marine mammals if the agency determines that such incidental harassment will have a negligible

impact on the marine mammal species or stock. *See, e.g.*, *id*. § 1371(a)(5)(D) (authority to issue

IHAs). The MMPA prescribes a strict timeline for the processing of IHA applications, requiring,

*inter alia*, NMFS to reach a final decision on an IHA application "[n]ot later than 45 days after

the close of the public comment period on the application." *Id*. § 1371(a)(5)(D)(iii).

**D.      President Obama's Withdrawal Under Section 12(a).**

On December 20, 2016, President Obama, pursuant to Section 12(a) of OCSLA (43

U.S.C. § 1341(a)), took action to "withdraw from disposition by leasing" 26 canyons and canyon

complexes offshore the Atlantic coast, as depicted below. Dkt. 213 (Steen Decl.), Ex. P.



President Obama's withdrawal memorandum does not address seismic surveys and refers only to "disposition by leasing." *Id*. Additionally, as shown on the map above, President Obama's withdrawal affected areas that largely fall outside of the range of the proposed surveys at issue in this litigation.

### E.    Executive Order No. 13,795.

On April 28, 2017, President Trump issued Executive Order No. 13,795 to "strengthen[] the Nation's security and reduce[] reliance on imported energy." Exec. Order No. 13,795, 82 Fed. Reg. 20,815, 20,815 (Apr. 28, 2017). This Executive Order modified President Obama's memorandum to eliminate the withdrawal of the 26 Atlantic canyons from disposition by leasing. *Id*. at 20,816. Executive Order No. 13,795 also states:

> The Secretary of the Interior and the Secretary of Commerce shall, to the maximum extent permitted by law, expedite all stages of consideration of Incidental Take Authorization requests, including Incidental Harassment Authorizations and Letters of Authorization, and Seismic Survey permit applications under the Outer Continental Shelf Lands Act, 43 U.S.C. 1331 et seq., and the Marine Mammal Protection Act, 16 U.S.C. 1361 et seq.

*Id*. at 20,817. The Executive Order does not prescribe the outcome of those considerations, or provide authority or discretion not otherwise permitted by law.

F.    **Secretarial Order 3350.**

On May 1, 2017, the Secretary issued Secretarial Order 3350 to carry out Executive Order No. 13,795. U.S. Dep't of the Interior, Sec. Order No. 3350 (May 1, 2017), https://www.doi.gov/sites/doi.gov/files/press-release/secretarial-order-3350.pdf. Among other things, Secretarial Order 3350 instructs BOEM to develop a new five-year leasing plan under OCSLA. *Id*. at 2. With respect to seismic surveys, the Order instructs BOEM to "[e]xpedite consideration of appealed, new, or resubmitted seismic permitting applications for the Atlantic." *Id*. The Secretarial Order, like the Executive Order, does not prescribe the outcome of those considerations, or provide authority or discretion not otherwise permitted by law.

## III. ARGUMENT

A.    **South Carolina's Challenge to the Legality of Executive and Secretarial Orders Provides No Basis for a Preliminary Injunction.**

South Carolina argues that it is likely to succeed on its argument that Executive Order No. 13,795 and Secretarial Order 3350 are illegal, and therefore a preliminary injunction is warranted against NMFS's IHAs. This argument has many fatal flaws.

*First*, South Carolina's complaint does not mention Secretarial Order 3350 or claim that Secretarial Order 3350 is invalid. *See* Dkt. 126 (South Carolina Complaint). Nor did South Carolina file suit against the Secretary as a defendant. *Id*. South Carolina, of course, cannot be "likely to succeed" on a claim that it has not pled against a person who is not a party to the case. *See*, *e.g.*, *Brooks v. Nacrelli*, 473 F.2d 955, 959 (3d Cir. 1973) (upholding denial of preliminary injunction where "appellants' complaint did not allege a violation of [the statute under which the claim for injunctive relief was brought], nor was there introduced at the hearing any testimony

indicating a violation of this statute"); *UHLIG, LLC v. Shirley*, No. 6:08-1208-HFF-WMC, 2009 WL 2997087, at *1 (D.S.C. Sept. 17, 2009) (party seeking preliminary injunctive relief "cannot succeed on the merits of a claim that does not exist").

*Second*, South Carolina's challenge to Executive Order No. 13,795 is similarly flawed. Although judicial review of Presidential action is available to ensure "that the President has not exceeded his statutory authority," *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002), South Carolina has not sued the President and cannot therefore prevail in a challenge to the Executive Order. Moreover, to the extent South Carolina presumes to challenge Executive Order No. 13,795 under the Administrative Procedure Act ("APA"), executive orders are "'not reviewable under the APA, because the President is not an "agency" within the meaning of the APA.'" *Sarsour v. Trump*, 245 F. Supp. 3d 719, 733 (E.D. Va. 2017) (quoting *Dalton v. Specter*, 511 U.S. 462, 469 (1994)).

*Third*, even if South Carolina were to amend its complaint to address the fatal flaws described above, its challenges to the Orders still cannot have any impact on this litigation. As set forth above, the only parts of Executive Order No. 13,795 and Secretarial Order 3350 related to seismic surveys are instructions to "expedite" consideration of IHA and seismic survey permits to the "maximum extent permitted by law." 82 Fed. Reg. at 20,817; Sec. Order No. 3350 at 2. A challenge to the President's discretionary decisions as to how to prioritize agency resources is beyond the scope of judicial review. *Specter*, 11 U.S. at 476 ("How the President chooses to exercise the discretion Congress has granted him is not a matter for our review."). Additionally, review of Presidential action is limited to *ultra vires* claims, and a Presidential Order to expedite permitting "to the maximum extent permitted by law" cannot, by definition, be *ultra vires*. *See Mountain States Legal Found.,* 306 F.3d at 1136. Likewise, there is no plausible

argument that a Secretarial Order that implements a President's Executive Order regarding the prioritization of agency resources is arbitrary and capricious under the APA, and South Carolina has provided no authority to support such an argument.[2]

*Fourth*, even if South Carolina was successful in invaliding Executive Order No. 13,795 and Secretarial Order 3350 in their entirety, there would still be no basis for preliminary injunctive relief here. NMFS's authority to issue an IHA (and the timing for so doing) stems from the MMPA, not from Executive Order No. 13,795 or from Secretarial Order 3350. *See* 16 U.S.C. § 1371(a)(5)(D). Likewise, BOEM's authority to issue permits for seismic surveys is independent of the leasing program, and President Obama's OCSLA Section 12(a) memorandum only applied to the "disposition by leasing." Dkt. 213 (Steen Decl.), Ex. P. *See* 43 U.S.C. § 1340(a)(1); 30 C.F.R. § 551.2. Thus, the issue of whether all or parts of the Atlantic OCS are either open for leasing or withdrawn from leasing is irrelevant to both NMFS's authority to issue the IHAs and BOEM's authority to issue off-lease seismic survey permits.[3]

In sum, South Carolina is exceedingly unlikely to prevail on its challenges to Executive Order No. 13,795 and Secretarial Order 3350, and even if it did prevail, such a claim would not

---

[2] In any event, neither NMFS nor BOEM has actually "expedited" any part of the IHA or survey permitting processes. In issuing the IHAs, NMFS exceeded the statutory timing requirements by *years*. And, as of the date of this filing, BOEM still has not issued any decisions on the permit applications, which have been pending for years. *See* Dkt. 215 (Declaration of Nikki Martin) ¶¶ 12-18.

[3] The issue that South Carolina seeks to inject in this case—whether Executive Order No. 13,795 can amend President Obama's withdrawal of Atlantic canyons under OCSLA Section 12(a)—is presently being litigated in the Alaska federal district court. *See League of Conservation Voters v. Trump,* No. 3:17-cv-00101 (D. Alaska). That case was filed in May 2017 and has been fully briefed on motions for summary judgment. Many of the plaintiffs in that case are the same as the environmental advocacy plaintiffs in this litigation (Case No. 18-cv-03326). No party in the Alaska lawsuit sought preliminary injunctive relief in that case.

impact the legal validity of the IHAs or any seismic survey permits that may be issued by BOEM. South Carolina's request for preliminary injunctive relief should therefore be denied.

**B.    South Carolina Is Unlikely to Prevail on Its Public Nuisance Claim.**

South Carolina next argues that it is likely to prevail on its claim that the IHAs (and permits that may be issued by BOEM) constitute a public nuisance under state and federal law. This argument also has many fatal flaws.

*First*, South Carolina law is clear that "[n]othing is a public nuisance which the law itself authorizes." *Brading v. County of Georgetown*, 327 S.C. 107, 115, 490 S.E.2d 4, 8 (1997); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) (same). That is because the "Legislature is ordinarily the proper judge of what the public good requires." *Law v. City of Spartanburg*, 148 S.C. 229, 146 S.E. 12, 14 (1928) (citation and internal quotation marks omitted). The same principle holds true under federal law: "actions authorized by statute or regulation do not give rise to nuisance liability." *Michigan*, 758 F.3d at 901; *New England Legal Found. v. Costle*, 666 F.2d 30, 33 (2d Cir. 1981) ("Courts traditionally have been reluctant to enjoin as a public nuisance activities which have been considered and specifically authorized by the government," especially "where the conduct sought to be enjoined implicates the technically complex area of environmental law and where Congress has vested administrative authority in a federal agency presumably having significant technical expertise"). The reasoning under federal law, like that under state law, is that "[w]hen Congress passes a statute, it weighs the competing public interests that would be served" and, therefore, "[a]ctivities commanded or authorized by that statute reflect the public interest and so cannot be *unreasonable* intrusions on a public right." *Michigan*, 758 F.3d at 901 (emphasis in original).

Applied here, South Carolina's public nuisance claim fails as a matter of law. Congress has authorized NMFS to issue IHAs under the MMPA (16 U.S.C. § 1371(a)(5)(D)) and BOEM

to issue seismic survey permits under OCSLA (43 U.S.C. § 1340(a)(1)). Since Congress has authorized these agency actions, the issuance of the IHAs or any BOEM permits pursuant to that congressional authority cannot be a public nuisance. As one court explained, "it is difficult to understand how an activity expressly permitted and extensively regulated by both federal and state government could somehow constitute a public nuisance." *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 296 (4th Cir. 2010). If South Carolina believes that the IHAs or any permits that may be granted by BOEM were issued in error, then it may challenge those agency actions under the APA. *Castle*, 666 F.2d at 33 ("the district court properly denied appellants equitable relief [on public nuisance claims] because they have an adequate (and, we note, more appropriate) remedy at law"). To allow a public nuisance claim against a federal agency for "acting in its regulatory capacity pursuant to its statutory mandate . . .  would be both counter-productive and beyond the proper scope of the judicial function." *Id*.

*Second*, South Carolina's own actions pursuant to the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1451 *et seq*., directly contradict its present claim. The CZMA authorizes states to review federal actions that may have reasonably foreseeable effects on the uses or resources of the coastal zone of a state for consistency with the enforceable policies of a state's approved coastal management program ("CMP"). *Id*. § 1456. Under this "federal consistency" provision, an applicant for a federal permit potentially affecting any land or water use or natural resource of a state's coastal zone must submit a consistency certification to the appropriate state agency certifying that the activity complies with the enforceable policies of the state's CMP. *Id*. § 1456(c)(3)(A). An applicant's submission of a consistency certification starts a review period during which a reviewing state can concur with or object to the applicant's consistency certification. *Id*. Despite its present claim, South Carolina issued *concurrences* in which it found

that three of the proposed surveys *are consistent with* South Carolina's CMP. *See, e.g.*, Second

Steen Decl., Exs. F, I, J.[4] South Carolina cannot reasonably complain that the very activities it

concurred with are a public nuisance. *See Brading,* 327 S.C. at 115, 490 S.E.2d at 8.

*Third*, South Carolina's public nuisance claim has no factual basis. To prevail on a public

nuisance claim, South Carolina must prove that the planned surveys are a "substantial and

unreasonable interference with a right common to the general public." *Michigan*, 758 F.3d at 904

(citing Restatement (Second) of Torts § 821B). However, as explained in the Intervenor-

Defendants' responses to the other pending motions for preliminary injunctive relief, tens of

thousands of seismic surveys have been carried out in the world's oceans and along coastlines

with marine-dependent communities over many decades, including on the Atlantic OCS in the

1970s and 1980s and in the last five years. *See* Dkt. 223. Yet there has not been a single instance

of a survey having any impact on a commercial or recreational fishery or a local economy

dependent on tourism. *Id*. South Carolina presents no evidence to the contrary and is therefore

unlikely to prevail on this claim.

## IV.  CONCLUSION

South Carolina's motion presents no meritorious reasons why preliminary injunctive

relief is warranted in this case. Like the other pending motions for preliminary injunctive relief,

South Carolina's motion should be denied.

---

[4] South Carolina made an untimely request to participate in the CZMA process for one of the proposed surveys, and the applicant for the fifth proposed survey is still working through the CZMA process. *See* Dkt. 217 (Declaration of Gary Stuart Poole) ¶ 4.

DATED:  March 22, 2019.                        Respectfully submitted,


                                                _s/ Sean D. Houseal_____
                                               Richard Morton, Fed. Id. No. 5442
                                               Sean Houseal, Fed. Id. No. 7676
                                               WOMBLE BOND DICKINSON (US) LLP
                                               301 S. College Street, Suite 3500
                                               Charlotte, NC 28202-6037
                                               5 Exchange Street
                                               Charleston, SC  29401
                                               Telephone:  704-331-4993
                                                                843-720-4622
                                               Facsimile:  843-723-7398
                                               Email:  Ric.Morton@wbd-us.com
                                               Email:  Sean.Houseal@wbd-us.com


                                               Ryan P. Steen, Admitted *Pro Hac Vice*
                                               Jason T. Morgan, Admitted *Pro Hac Vice*
                                               STOEL RIVES LLP
                                               600 University Street, Suite 3600
                                               Seattle, WA  98101
                                               Telephone: 206-624-0900
                                               Facsimile: 206-386-7500
                                               Email: ryan.steen@stoel.com
                                                       jason.morgan@stoel.com

                                               *Counsel for Intervenor-Defendants*