# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| City of Beaufort, et al., | ) | |
| | ) | **No.: 2:18-cv-03326-RMG** |
| Plaintiffs, | ) | **(Consolidated with 2:18-cv-3327-RMG)** |
| | ) | |
| v. | ) | **RESPONSE OF STATE** |
| | ) | **OF SOUTH CAROLINA, EX REL** |
| NATIONAL MARINE FISHERIES | ) | **ALAN WILSON,** |
| SERVICE, CHRIS OLIVER, in his official | ) | **ATTORNEY GENERAL** |
| capacity as the Assistant Administrator for | ) | **TO FEDERAL DEFENDANTS'** |
| Fisheries, and WILBUR ROSS, in his official | ) | **SUBMISSION OF PARKER** |
| capacity as the Secretary of Commerce, | ) | **DRILLING DECISION** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| And | ) | |
| | ) | |
| State of South Carolina, ex rel Alan Wilson, | ) | |
| Attorney General, | ) | |
| | ) | |
| Intervenor | ) | |
| _____ | ) | |
| | ) | |
| South Carolina Coastal Conservation League, | ) | |
| et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Wilbur Ross, in his official capacity as the | ) | |
| Secretary of Commerce; et al., | ) | |
| | ) | |
| Defendants. | ) | |

Federal defendants invoke the recent Supreme Court decision of *Parker Drilling Mgmt. Services v. Newton*, 587 U.S. ___ (2019) in support of their Partial Motion to Dismiss. They cite *Parker Drilling* presumably to demonstrate that the State cannot employ a common law public nuisance claim under South Carolina law pursuant to the Outer Continental Shelf Lands Act.

1

See 43 U.S.C. § 1333(a)(2)(A).  However, *Parker Drilling* does not in any way interpret the OCSLA to preclude the State's nuisance claim pursuant to South Carolina law.  Indeed, this decision reinforces the validity of this cause of action on behalf of the State.

*Parker Drilling* held that California's minimum wage and overtime laws could not be employed as a choice-of-law to "fill the gaps" to allow Parker and his class members to be compensated for their standby time while working on an oil drilling platform.  Interpreting 43 U.S.C. § 1333(a)(2)(A) of the OCSLA – which allows state law to supplement federal law "to the extent . . . applicable and not inconsistent . . ." with federal law, the *Parker Drilling* Court held that "'state law can be applicable and not inconsistent' under § 1333 (a)(2) (A) only if federal law does not address the relevant issue." Slip Op. at ___.  There, the Court stated:

> [f]inally, our interpretation accords with the Court's precedents construing the OCSLA.  We first interpreted the OCSLA's choice-of-law provision in *Rodrigue v. Aetna Casualty and Surety Co.* [395 U.S. 352 (1969)], where we considered whether suits brought by the families of men killed in OCS drilling rigs could proceed only under the Death on the High Seas and or also under state law.  395 U.S. at 352-352.  We emphasized that under the OCSLA, the body of law applicable to the OCS "was to be federal law of the United States, applying state law only as federal law and then only when not inconsistent with applicable federal law." *Id*. at 355-356.  We explained that "federal law, because of the limited function in a federal system, might be inadequate to cope with the full range of potential legal problems," and that the OCSLA "supplemented gaps in the federal law with state law as the law of the United States." *Id.*, at 357 (quoting § 1333(a)(3)).  We reiterated that the statutory language makes it "evident" "that federal law is 'exclusive' on the OCS and that "state law could be used to fill federal voids." *Id.*, at 357-358.  After concluding that the Death on the High Seas Act did not apply to accidents on the OCS and thus left a gap related to wrongful deaths, we held that state law provided the rule of decision.  We explained that "the inapplicability of the [federal Act] removes any obstacle to the application of state law by incorporation as federal law through" the OCSLA.
> *Id.* at 366.

Slip Op. at ___.  See also *Chevron Oil Co. v. Huson*, 494 U.S. 97 (1971).

Federal defendants contend that South Carolina's common law of public nuisance contravenes § 1333(a)(2)(A) because it is "inconsistent with federal law. . . ." See *Federal Defendants' Reply In Support of Partial Motion to Dismiss* at 14 and n. 13. It is not. South Carolina's nuisance law is instead supplementary to federal law.

Defendants argue that a state common law nuisance action cannot be used because such a nuisance action "ignores that Congress has articulated the appropriate standards to be applied when evaluating NMFS's action. That is, whether NMFS's action was lawful and reasonable is a question that is to be decided under the comprehensive standards established by the MMPA and informed by the APA." *Id*. at 14, n. 13. However, a similar argument was rejected by the South Carolina Court of Appeals in *Neal v. Darby*, 282 S.C. 277, 318 S.E.2d 18 (Ct. App. 1984). In *Neal*, the Court held that a public nuisance in South Carolina "is anything which works hurt, inconvenience or damage, anything which essentially interferes with the enjoyment of life or property." 282 S.C. at 285, 318 S.E.2d at 23. There, the Court held that a public nuisance action under South Carolina law was not inconsistent with or at variance with a federal and state regulatory scheme concerning the harms to the community and its citizens imposed by a landfill:

> [t]he company first argues the trial judge did not give sufficient weight to its state and federal permits. Although it concedes the South Carolina Hazardous Waste Management Act . . . and the Federal Solid Waste Disposal Act . . . do not preempt South Carolina common law nuisance actions, the company argues deference should be given to state and federal environmental authorities. As support for this proposition, the company cites *City of Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981), and *New England Legal Foundation v. Costle*, 666 F.2d 30 (2d Cir.1981). In *City of Milwaukee*, the Supreme Court held the Federal Water Pollution Control Act displaces federal common law with respect to claims brought by states. States cannot maintain federal common law actions to abate nuisances or impose more stringent standards than those of the federal act. However, the Court stated that, as to in-state discharges, states may adopt more stringent limitations through state nuisance law. In addition, the federal citizen-suit provision there, similar to that in the Solid Waste Disposal Act here, preserves common law actions. *New England Legal Foundation*, which relied on *City*

3

> *of Milwaukee*, held only that federal courts should not fashion federal equitable remedies (based on federal common law) to enjoin activity approved by a federal agency. Obviously, the trial court here applied state, not federal, common law.
>
> Furthermore, contrary to the company's argument, the trial judge devoted two pages of his opinion to consideration of its state and federal permits. Concluding a nuisance is not excused by the fact it arises from a lawful business, the trial judge quoted the following language from *Young v. Brown*, 212 S.C. 156, 170, 46 S.E.2d 673, 679 (1948):
>
>> A lawful business should not be enjoined on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over-sensitive person, but on the other hand no one, whatever his circumstances or condition may be, should be compelled to leave his home or live in mental discomfort, although caused by a lawful and useful business carried on in his vicinity.
>
> We find the trial judge balanced the interests involved and gave sufficient weight to the state and federal permits held by the company.

282 S.C. at 284-85, 318 S.E.2d at 23.

As in *Neal*, the OCSLA expressly preserves common law actions. 43 U.S.C. § 1349(a)(1) of the OCSLA states that "Nothing in this section shall restrict any right which any person or class of persons may have under . . . common law to seek appropriate relief." Thus, the OCSLA expressly contemplates the preservation of state common law nuisance actions, and deems such nuisance actions not to be "inconsistent" with the federal regulatory scheme referenced by federal defendants.

The "comprehensive standards established by the MMPA and informed by the APA," as federal defendants describe it, leaves a gap to be filled by state public nuisance law. As the Alaska Supreme Court has held, where, as here, the State attempts to enforce its own law with respect to its own property (here, State land adjacent to the OCS), "a traditional state function" – to provide additional protection to marine mammals, such is surely not inconsistent with the MMPA. *State of Alaska v. Arnarisk*, 941 P.2d 154, 158 (AK. 1997). Otherwise, the Fifth

4

Amendment "takings clause" is violated. *Arnarisk, id.* Accordingly, the requirements of *Parker Drilling* are here met. Rather than being inconsistent with federal law, South Carolina's public nuisance claim is supplementary thereto.

                    Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: rcook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email:  esmith@scag.gov

T. PARKIN C. HUNTER
Senior Assistant Attorney General
Attorney Id. #2018
Email:  phunter@scag.gov

MATTHEW D. HOUCK
Assistant Attorney General
Fed. ID No. 11588
Email: mhouck@scag.gov

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3680
Fax: (803) 734-3677

June 18, 2019