IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| South Carolina Coastal Conservation League, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 2:18-3326-RMG |
| vs. | ) ) ) | |
| Wilbur Ross, in his official capacity as the Secretary of Commerce, *et. al.*, | ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This matter comes before the Court on the Federal Defendants' partial motion to dismiss challenging specific claims asserted by the State of South Carolina. (Dkt. No. 259). South Carolina has filed a memorandum in opposition and the parties have made supplemental filings. (Dkt. Nos. 278, 294, 305, 311). As set forth more fully below, the Court grants in part and denies in part the partial motion to dismiss of the Federal Defendants.

**Legal Standard**

The Federal Defendants[1] have moved to dismiss certain claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A 12(b)(1) motion is a challenge to the Court's subject matter jurisdiction and raises the fundamental question of whether the court has jurisdiction to adjudicate the matter before it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The plaintiff carries the burden to prove jurisdiction, and the court "may consider evidence outside

---

[1] The Federal Defendants are Wilbur Ross, in his official capacity as the Secretary of Commerce; National Marine Fisheries Service; and Chris Oliver, in his official capacity as the Assistant Administrator for Fisheries.

1

the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F. 2d 765, 768 (4th Cir. 1991).

A motion pursuant to 12(b)(6) attacks the sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . Our inquiry is limited to whether the allegations constitute a short and plain statement of the claim showing the pleader is entitled to relief." *Republican Party of N.C. v. Martin*, 980 F. 2d 943, 952 (4th Cir. 1992). When considering such a motion, the court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). While the court must accept the facts in light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Factual Background**

This consolidated action[2] was initially brought by various environmental groups and local government entities challenging the decision of the National Marine Fisheries Service ("NMFS") to issue incidental harassment authorizations to five companies to conduct seismic air gun surveys for oil and gas in the coastal waters of the Mid- and South Atlantic Ocean. These groups alleged violations of the Marine Mammal Protection Act, Endangered Species Act, National Environmental Policy Act, and the Administrative Procedure Act. (C.A. No. 2:18-3326, Dkt. No. 1; 2:18-3327, Dkt. No. 1). The State of South Carolina subsequently moved and was granted the right to intervene. South Carolina's complaint raised a variety of additional claims, including a challenge to Executive Order 13,795 and assertion of public nuisance, trespass and admiralty causes of action. (Dkt. No. 126).

The Federal Defendants filed this partial motion to dismiss, arguing that the State had asserted "four novel and legally baseless theories raised by no other party to this suit." (Dkt. No. 259). The partial motion to dismiss asserted that (1) South Carolina had no standing to challenge Executive Order 13,795; (2) the challenge to the Executive Order has no legal merit; (3) the public nuisance and trespass claims are barred by sovereign immunity, preempted by federal law, and otherwise have no merit; (4) the admiralty claim is without merit. (Dkt. No. 259).

**Discussion**

A.   Standing

South Carolina asserts in its First Cause of Action that Executive Order 13,795 is *ultra vires* because President Donald Trump acted to withdraw certain unleased lands belonging to the United States from areas previously withdrawn from leasing by President Obama under the

---

[2] Unless otherwise indicated, all references to the Docket will be to C.A. No. 2:18-3326, which is the case number of the consolidated case.

Outer Continental Shelf Lands Act ("OCSLA"). South Carolina argues that Congress gave the President the authority to withdraw land from leasing on the Outer Continental Shelf ("the "OCS"), but not the power to reverse that decision and make such areas eligible again for leasing. (Dkt. No. 126 at 5-6).

The Federal Defendants argue that South Carolina has no standing because a finding that Executive Order 13,795 is beyond the President's authority would not redress the State's challenge to the proposed seismic testing survey activity. The Federal Defendants contend that the Executive Order, which seeks to promote oil and gas exploration off the East Coast of the United States, has nothing to do with the seismic testing surveys which South Carolina seeks to prevent. Thus, the Federal Defendants argue that the "proposed seismic surveys are legally distinct from the [Executive] Order." (Dkt. No. 259 at 16-18).

South Carolina argues that what it alleges to be an unlawful Executive Order "served as the genesis" for a variety of actions by various federal agencies, including the seismic testing surveys under challenge. (Dkt. No. 278 at 1.) In support of its argument, South Carolina notes that Executive Order 13,795 explicitly instructs federal officials, in furtherance of the goal of authorizing and expediting oil and gas leases on the OCS, to issue "incidental harassment authorizations, incidental-take, and seismic survey permits." (*Id.* at 3.); Implementing An America-First Offshore Energy Strategy, Executive Order 13,795, 82 Fed. Reg. 20,815, 2017 WL 1633447 (Apr. 28, 2017).

The Federal Defendants made a similar argument in challenging the standing of plaintiffs before an Alaska district court on the basis that there was no relationship between Executive Order 13,795 and the promotion of seismic testing in the waters off Alaska. In *League of Conservation Voters v. Trump*, 363 F. Supp. 3d 1013 (D. Alaska 2019), the court rejected this

4

alleged disconnect between the recent seismic testing surveys and the Executive Order, finding that "the Bureau of Ocean Energy Management responded to the Executive Order by beginning its evaluation of certain seismic surveying permit applications in areas where the permits had been denied prior to the Executive Order . . . Therefore, the Court remains of the view that Plaintiffs have demonstrated standing." 363 F. Supp. 3d 1020, n. 34.[3]

South Carolina correctly notes that this same sequence of events has occurred in areas under challenge in this litigation. The seismic testing applications under challenge by Plaintiffs have been processed since the issuance of the Executive Order, and South Carolina has made a sufficient showing at this stage of the litigation of the relationship between the President's Executive Order and the challenged permits. The Federal Defendants' motion to dismiss on the basis of standing is denied.

    B.    <u>Alleged Lack of Legal Merit of South Carolina's Challenge to Executive Order 13,795</u>

Federal Defendants argue that South Carolina's claim that Executive Order 13,795 exceeded the authority of the President under the OCSLA has no "credible legal basis" and cannot meet the plausibility requirements of *Iqbal*. (Dkt. No. 259 at 18-23). South Carolina's complaint sets forth its allegation that "Congress did not bestow on the President the power to revoke a previous withdrawal in the OCSLA and no other statute does so . . . Accordingly, Order 13,795 is ultra vires and without legal effect." (Dkt. No. 126 at 6).

The Federal Defendants' legal brief, quite strikingly, fails to reference the final order of the District of Alaska in *League of Conservation Voters v. Trump*, issued on March 29, 2019,

---

[3] In an earlier order addressing the Federal Defendants' motion to dismiss on standing grounds, Judge Sharon L. Gleason observed that while seismic testing could occur without the Executive Order, "there would be no apparent incentive for the industry to conduct seismic surveying in areas closed off from drilling." *League of Conservation Voters v. Trump*, C.A. No. 3:17-101-SLG, Dkt. No. 45 at 19, n. 90 (D. Alaska 2018).

twenty- four days before the filing here, which declared Section 5 of the Executive Order "unlawful and invalid" because it exceeded the President's authority to withdraw from protection areas on the OCS that by previous presidential order had been withdrawn from possible oil and gas leasing. The Order concluded with the following statement: "Section 5 of Executive Order 13,795 is hereby VACATED." 363 F. Supp. 3d at 1031.[4] The Federal Defendants have also failed to advise the Court that U.S. Interior Department Secretary David Bernhardt, citing the Alaska district court decision, told the *Wall Street Journal* on April 25, 2019 that the Trump Administration was indefinitely pausing its efforts to expand oil and gas leases pending completion of appellate review in *League of Conservation Voters v. Trump*. *See* Timothy Puko, *Trump's Offshore Oil-Drilling Plan Sidelined Indefinitely*, WALL ST. J., Apr. 25, 2019. The appeal of the Alaska case is now pending in the Ninth Circuit Court of Appeals.

The Court finds that South Carolina has plausibly set forth its claim. Without presuming to reach the merits of this argument at this stage of the litigation, there is certainly ample evidence that this is a sufficiently serious claim that a federal district judge has vacated Executive Order 13,795 and the Secretary of Interior has paused efforts to expand oil and gas leasing on the OCS pending further judicial review. The Federal Defendants' motion to dismiss South Carolina's claim that Executive Order 13, 795 is *ultra vires* (First Cause of Action) on the basis that it is "implausible" and "not credible" is denied.

C.    State Law Claims of Nuisance and Trespass

---

[4] Section 5 of the Executive Order withdraws previously designated areas of protection from leasing and makes them potentially available for oil and gas exploitation. Executive Order 13,795, 2017 WL 1633447 at *20816.

6

South Carolina asserts common law claims for nuisance and trespass and seeks declaratory and injunctive relief. (Dkt. No. 126 at 8-10). Federal Defendants argue that these claims are torts and are governed by the Federal Tort Claims Act ("FTCA"), which limits actions against the Federal Government to claims for money damages. 28 U.S.C. § 1346(b)(1). Otherwise, the Federal Defendants argue, such claims are barred by sovereign immunity. *Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991) (sovereign immunity not waived for tort claims against the United States beyond money damage claims under the FTCA).

South Carolina argues that its assertion of state common law claims is authorized by language in the OCSLA which provides that "the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States" so long as they are "applicable to and not inconsistent with the federal statute." 43 U.S.C. § 1333(2)(A). South Carolina contends that the state's nuisance and trespass provisions are not inconsistent with the OCSLA and may be asserted against the United States pursuant to this statutory provision.

The interplay between the OCSLA and state law was thoughtfully addressed by the United States Supreme Court this past term in *Parker Drilling Management. Services., Ltd. v. Newton*, 139 S. Ct. 1881 (2019). Although recognizing that the vagueness of statutory language presented a "close question," a unanimous Court, considering the statute as a whole, held that the OCS represented "an exclusive federal enclave" and federal law and policy controlled unless there is a gap in federal law that must necessarily be filled by state law. *Id.* at 1892. Thus, where "a federal law addresses the issue at hand, then state law is not adopted as federal law on the OCS." *Id.*

Applying the standards of *Parking Drilling*, it is apparent that the OCSLA establishes the law of the OCS and addresses issues regarding the regulation of the OCS. South Carolina may

7

not assert state common law claims that address areas regulated by federal statutory law. Consequently, Federal Defendants' motion to dismiss South Carolina's nuisance and trespass claims (Sixth, Seventh and Eighth Causes of Action) is granted.

D.   Admiralty Claims

South Carolina, in an extremely abbreviated manner, asserts a claim for relief under maritime law without pleading facts to support admiralty jurisdiction and fails to set forth any basis for asserting a tort on the navigable waters or a nexus between conduct on land and a vessel on the navigable waters. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531-32 (1995). South Carolina makes no substantive argument in response to the Federal Defendants' persuasive arguments on this issue. Consequently, the Court grants the Federal Defendants' motion to dismiss South Carolina's admiralty claim (Ninth Cause of Action).

## Conclusion

Based on the foregoing, the Court grants the Federal Defendants' partial motion to dismiss (Dkt. No. 259) is **GRANTED IN PART and DENIED IN PART**. The Court dismisses the nuisance, trespass and admiralty claims (Sixth, Seventh, Eighth, and Ninth Causes of Action). The Court otherwise denies the Federal Defendants' partial motion to dismiss.

**AND IT IS SO ORDERED**.

Richard Mark Gergel
United States District Judge

February 13, 2020
Charleston, South Carolina

8